EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* WILLIAM DE LEÓN COLLAZO, acusado y apelante.

*Número:* CR-73-110 *Resuelto:* 13 de septiembre de 1974

*Benigno Alicea Alicea*, abogado del apelante; *Myriam Naveira de Rodón, Procuradora General,* y *Peter Ortiz, Subprocurador General,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Como consecuencia de actos delictivos del apelante perdieron la vida debido a quemaduras de primero, segundo y

tercer grado dos seres humanos: una mujer de edad madura y una mujer joven. Otro ser humano, un hombre, sufrió graves quemaduras de segundo y tercer grado.

La prueba demuestra que el apelante llegó a su casa la noche del día de los hechos acompañado de Daniel Alejandro Charón, después de ambos haber estado tomando licor juntos. El apelante pidió a su madre que le entregase la llave de un automóvil y al ésta no hacerlo el apelante rompió la pantalla del televisor que la familia estaba viendo, lanzándole una botella y luego le dio una patada a dicho televisor. El apelante comenzó a buscar la llave, revolcando todo lo que estaba a su alcance, mientras su madre trataba de calmarlo. Al no lograrlo, envió a su hija menor a buscar al hermano mayor del apelante, llamado Enrique De León Collazo.

La prueba es conflictiva sobre si Enrique y el apelante riñeron al llegar el primero a la casa, pero no lo es en cuanto a que el apelante se armó de un cuchillo el cual su amigo Daniel logró quitarle. La situación de violencia real o potencial era tal que la madre del apelante y de Enrique y la esposa de Enrique llevaron a éste a otra habitación de la casa para evitar consecuencias más graves.

Después que Enrique fue llevado a dicha habitación y mientras allí permanecía, el apelante se enfureció más, y entre otras cosas, amenazó con quemarlos. Sobre el particular, el testigo ocular Daniel Alejandro Charón declaró que el apelante, en esos momentos, luego de que él, Daniel, le quitara el cuchillo amenazó con pegar fuego a la casa y que además expresó "Ahora verán como todos salen para afuera prendidos." Acto seguido, el apelante estrelló contra el piso, rompiéndolo, un galón de queroseno y se dirigió a coger unos fósforos. Daniel se percató de la situación y actuando rápidamente agarró los fósforos y los botó. A esto el apelante comentó "que en la tienda había más."

Luego de lo anterior, el apelante bajó de la casa, fue a la tienda de la esquina y allí compró una caja de cigarrillos,

un trago de licor y una caja de fósforos. Luego de tomarse el trago se guardó los cigarrillos y los fósforos en el bolsillo y se fue de la tienda. El testigo Daniel estima que esto tomaría unos cinco minutos. El apelante regresó a la casa—Daniel lo había seguido—y entró. Daniel se quedó afuera. A los pocos minutos Daniel oyó un silbido. Al oírlo corrió hacia dentro de la casa y allí vio al apelante con la mano puesta sobre la llave de un tanque de gas combustible. Daniel se abalanzó sobre el apelante para evitar, según declaró, que éste matase a su hermano y que quemase la casa. Luego del forcejeo el testigo salió de la casa pero el apelante se quedó dentro. Casi enseguida el apelante también salió de la casa y se unió a Daniel. A los pocos minutos hubo una explosión y el testigo vio a la madre del apelante salir para afuera "prendida en llamas," tal como el apelante lo había pronosticado antes. En segundo lugar también salió la esposa de Enrique prendida en llamas. El trágico balance de los actos del apelante ya lo hemos mencionado antes.

El apelante fue acusado de dos delitos de asesinato en primer grado y de uno de ataque para cometer asesinato. El jurado lo encontró culpable de dos delitos de homicidio voluntario y de uno de ataque para cometer asesinato. También había sido acusado de una infracción a la Ley de Armas pero de esta acusación salió absuelto.

En apelación hace dos señalamientos de error. El primero, en el sentido de que incidió el tribunal de instancia al denegar instrucciones sobre homicidio involuntario y el segundo, en el sentido de que también incidió el tribunal al no dar instrucciones sobre acometimiento y agresión.

█ Vamos a discutir ambos señalamientos conjuntamente. Como se sabe, es sólo cuando la prueba lo justifica que se deben impartir instrucciones sobre un delito menor que el que contiene la acusación. *Pueblo* v. *Prados García*, 99 D.P.R. 384, 395 (1970); *Pueblo* v. *Maysonet Arroyo*, 98 D.P.R. 60, 63 *in fine* (1969) y autoridades allí citadas.

 Lejos de la prueba justificar la conclusión de que los daños corporales fueron causados por el apelante involuntariamente, por el contrario, lo que la prueba demuestra es la intención tenaz del apelante de quemar a sus víctimas. Primero trató de hacerlo con queroseno y cuando le faltaron los fósforos fue a la tienda a buscarlos. Al regresar de la tienda y para asegurarse de que su propósito no fallaba, además del queroseno que había derramado sobre el piso, abrió la llave del gas combustible. No hay nada de involuntario en esa operación. La intención maliciosa y criminal se presume por la manera con que se intenta cometer un acto ilegal con el propósito de perjudicar a otro. Dicha intención se manifiesta por las circunstancias relacionadas con el delito. Arts. 11 y 12 del Código Penal, ed. 1937; 33 L.P.R.A. secs. 32 y 33. La ley supone que toda persona intenta las consecuencias naturales de sus actos. Cuando el daño corporal es el resultado de la conducta ilegal de la persona se presume la intención, *Pueblo v. Astacio*, 23 D.P.R. 842 (1916), a menos, claro está, que la prueba demuestre lo contrario, *Pueblo v. Franco*, 23 D.P.R. 549 (1916).[1] Los hechos del caso de autos demuestran claramente la intención criminal.

No erró el tribunal de instancia al no dar instrucciones sobre homicidio involuntario. Las instrucciones sobre acometimiento y agresión no fueron solicitadas, pero aun habiéndolo sido tampoco procedían. Claramente no se trataba de un mero acometimiento y agresión.

Realmente los veredictos del jurado favorecieron al apelante, pues la prueba era suficiente para sostener dos vere-

---

[1] El nuevo Código Penal, Ley Núm. 115 de 22 julio 1974, 33 L.P.R.A. secs. 3001 y ss., contiene sobre el particular disposiciones similares a las del Código Penal vigente. Así, en su Art. 15, 33 L.P.R.A. sec. 3062, dispone que el delito es intencional "(a) Cuando el resultado ha sido previsto y querido o pudo ser previsto por la persona como consecuencia de su acción u omisión; o (b) Cuando el resultado sin ser querido ha sido previsto por la persona como consecuencia natural o probable de su acción u omisión."

dictos de asesinato y uno de ataque para cometer asesinato, según fueron imputados en la acusación. El recurso es frívolo.

No se cometieron los errores señalados. *Se confirmará la sentencia apelada.*