EL PUEBLO DE PUERTO RICO, apelado, *v.* SERGIO COLÓN SOTO, acusado y apelante.

*Número:* CR-79-40　　*Resuelto:* 8 de abril de 1980

*M. Martínez Umpierre*, abogado del apelante; *Héctor A. Colón Cruz, Procurador General*, y *Ricardo E. Alegría Pons, Procurador General Auxiliar*, abogados de El Pueblo.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El Ministerio Público acusó al señor Colón Soto del delito de asesinato en primer grado y de violación de los Arts. 6 y 8 de la Ley de Armas, Ley Núm. 17 de 19 de enero de 1951, 25 L.P.R.A. secs. 416 y 418, respectivamente.

El juicio se ventiló ante tribunal de derecho. El juez halló culpable al acusado del delito de homicidio voluntario ([1]) y de las aludidas infracciones a la Ley de Armas. Le impuso una pena de cuatro a nueve años de reclusión en el primer caso. El apelante argumenta ante nos que erró el tribunal al no condenarlo en vez por el delito de homicidio involuntario.

De la prueba se desprende que la víctima, J. A. del Toro, músico y bebedor, se hallaba a la una de la tarde en un negocio sito en un barrio de Arecibo. Le pidió al entrar a la dueña una caneca de ron y comenzó a tomársela. Al poco rato llegó el apelante y ordenó un *whisky*. El apelante empezó a bromear con la víctima y le tumbó la gorra con la mano. El único testigo ocular, nieto de la dueña del negocio, expresó que las partes no estaban discutiendo, sino de bromas, metidos en tragos. Al cabo el apelante le dijo a la víctima que le iba a quitar la gorra de un disparo. Le apuntó entonces con un revólver cargado. La víctima se quedó quieta, según el testigo. El apelante disparó y le atravesó la frente a la víctima con un proyectil calibre 357, magnum S.J.H.P.

Examinemos el tratamiento estatutario del asesinato y el homicidio en Puerto Rico. El Art. 83 del Código Penal de Puerto Rico de 1974, 33 L.P.R.A. sec. 4002, dispone:

---

([1]) Aunque el Código no utiliza el término "voluntario" con referencia al homicidio, lo empleamos en el curso de esta opinión debido al reconocimiento en él del concepto opuesto, el del "homicidio involuntario".

"Todo asesinato perpetrado por medio de veneno, acecho o tortura, y toda clase de muerte alevosa, deliberada y premeditada, o cometida al perpetrarse o intentarse algún incendio de morada, violación, sodomía, robo, escalamiento, secuestro, estragos, mutilación o fuga constituye asesinato en primer grado, siendo de segundo grado todos los demás."

El homicidio voluntario se define así en nuestro Código, Art. 85 del Código Penal de 1974, 33 L.P.R.A. sec. 4004:

"Toda persona que matare a otra en ocasión de súbita pendencia o arrebato de cólera será sancionada con pena de reclusión por un término mínimo de un año y máximo de diez años."

El homicidio involuntario, Art. 86 del Código Penal, 33 L.P.R.A. sec. 4005, se describe en parte de este modo:

"Toda persona que obrando con negligencia o que al realizar un acto ilegal que no constituyere delito grave, ocasionara [*sic*] la muerte a otra, será sancionada con pena de reclusión por un término que no excederá de tres años o multa que no excederá de tres mil dólares. . . ."

Nuestro Código sigue básicamente el patrón del ordenamiento californiano de 1872, que a su vez deriva de Cal. Stats. 1850, c. 99, sec. 19 *et seq.* Este esquema decimonónico, con su glosa, ha sido y sigue siendo objeto de severa crítica. Se ha clamado por el reexamen del concepto de "malicia premeditada". Perkins, *A Re-Examination of Malice Aforethought*, 43 Yale L.J. 537 (1934). La doctrina del "corazón pervertido y maligno" no goza de gran prestigio entre varios autores. Collings, *Negligent Murder—Some Stateside Footnotes to Director of Public Prosecutions v. Smith*, 49 Calif. L. Rev. 254 (1961). La diferencia entre grados de asesinato se ha eliminado en algunas comunidades, H. Silving, *Criminal Justice*, The Univ. of P.R., 1971, Vol. II, pág. 682, así como se rechazaba en nuestro antiguo Código Penal, fundado en el de España de 1870. La distinción entre delitos graves y menos graves se ha repudiado hoy también aun en la propia cuna del Derecho Común, Criminal Law Act 1967, s. 1 (1967 c. 58), 8 *Halsbury's Statutes of England*, London, Butterworths, 3rd ed., pág. 552.

Hace veintitrés años criticamos la diferencia establecida entre asesinato y homicidio a base de si el acto ilegal subordinado es un delito grave o menos grave. *Pueblo* v. *Figueroa*, 80 D.P.R. 328, 338–339, escolio 10 (1958). No nos compete, sin embargo, alterar el enfoque legislativo de estos debatidos temas, aunque algunos de los términos en que se exponen son de naturaleza dinámica y han sido objeto ocasionalmente de evolución a través de la jurisprudencia. Analicemos por tanto la causa presente estrictamente a la luz del estado actual de nuestro derecho, aun estando conscientes de sus limitaciones sobre este particular.

[1]   No se trata aquí en verdad de un homicidio voluntario, ya que los hechos no cuadran con los requisitos que establece la ley. La prueba en este caso no indica que la muerte ocurrió "en ocasión de súbita pendencia o arrebato de cólera". Mas esto no quiere decir que el delito cometido fue entonces de por fuerza el de homicidio involuntario. Primero hay que determinar si el disparo mortífero efectuado por el apelante constituyó un homicidio o un asesinato.

En *Pueblo* v. *Méndez*, 74 D.P.R. 913 (1953), discutimos extensamente el desarrollo histórico de los delitos de asesinato y homicidio, tanto en el Derecho Común como en el Civil. Señalamos que la existencia de malicia es lo que distingue un delito del otro en nuestro derecho (*id.* 930). Añadimos que "la malicia puede inferirse del uso de un arma, ya que tal uso puede implicar razonablemente una intención de matar o de causar daños cuya consecuencia probable sea la muerte" (*id.* 931). (²) Tal ha sido y continúa siendo la doctrina vigente en Puerto Rico. *El Pueblo* v. *Dumas*, 14 D.P.R. 397, 402–403 (1908); véanse los artículos citados del Código Penal de 1974, *supra*. (³)

---

(²) En *Méndez* comentamos también la tendencia de los códigos modernos a rechazar el antiguo concepto de malicia. (*Id.* 932 *et seq.*)

(³) Adviértase que hablamos de inferir y no de presumir la malicia, aunque la distinción es extremadamente tenue. No es necesario en consecuencia discutir el posible choque en determinadas circunstancias entre una presunción de malicia y la presunción constitucional de inocencia.

■ Lo anterior exige que estudiemos el significado del vocablo "malicia" en el contexto del asunto que nos ocupa. El Art. 7(19) del nuevo Código Penal, 33 L.P.R.A. sec. 3022(19), define así el término:

"(19) Malicia o maliciosamente.—Denotan la comisión de un acto dañoso, intencionalmente, sin justa causa o excusa y la consciente naturaleza del mismo."

El Art. 15 (33 L.P.R.A. sec. 3062), a su vez, aclara el sentido de intencional:

"El delito es intencional:

(a) Cuando el resultado ha sido previsto y querido por la persona como consecuencia de su acción u omisión; o

(b) Cuando el resultado sin ser querido ha sido previsto o pudo ser previsto por la persona como consecuencia natural o probable de su acción u omisión."

■ En el caso de autos, no cabe duda que el apelante pudo haber previsto que la muerte de la víctima podía resultar como consecuencia natural o probable de su acto. Su acción estaba preñada de peligrosidad. La muerte ocurrida constituyó conforme a nuestro código un acto intencional y malicioso, sin justa causa o excusa. El apelante pudo haber sido convicto de asesinato en segundo grado.

A tal conclusión llegamos en *Pueblo* v. *Cruz*, 49 D.P.R. 653, 658–59 (1936). En tal caso el acusado disparó su revólver después de un bautizo, sin mediar riña, dentro de un cuarto atestado de personas. Expresamos:

"No surge de sus actos una intención deliberada de matar a determinado ser humano, pero no es su caso el caso de una persona que altera la paz haciendo disparos al aire, sino el de una persona que dispara su arma mortífera de modo tal que tiene que saber que puede herir y matar a los seres humanos que lo rodean y que eso no obstante, sin provocación, sin justificación alguna, continúa en la realización de su acto criminal hasta que cae mortalmente herido un ser humano."

Confirmamos el veredicto de asesinato en segundo grado. Al mismo efecto: *Commonwealth* v. *Malone*, 47 A.2d 445 (Pa. 1946).

El apelante se apoya únicamente en el caso de *Pueblo* v. *Martínez Vega*, 98 D.P.R. 946 (1970). En este pleito el acusado realizó varios disparos desde el balcón de su apartamiento para despedir el año. Un proyectil mató a una persona accidentalmente. Se le acusó y condenó por la comisión del delito de homicidio involuntario. Argumentó en alzada que la prueba no era suficiente para declararlo culpable. El tribunal estimó que lo era y confirmó la sentencia. *Martínez Vega* es distinguible del caso de autos. Lo único que resuelve es que la prueba para justificar la acusación y condena por homicidio involuntario era suficiente en derecho. No había necesidad alguna de discutir la relación entre asesinato y homicidio en situaciones de esta índole. Los hechos también son distintos. El grado de peligrosidad en el caso de autos era de tal orden que ampliamente permitía la inferencia de malicia. En *Martínez Vega* el Ministerio Público aun consideró que la prueba justificaba tan solo una acusación de homicidio involuntario.

■ Queda por analizar el hecho de que el tribunal de instancia condenó al apelante en esta causa por un delito menor que el cometido. Nuestra jurisprudencia sostiene que en tales circunstancias el fallo es válido, aunque se funde en una interpretación equivocada de la ley, por no haberse incurrido en error perjudicial al acusado. *Pueblo* v. *Rivera*, 67 D.P.R. 194, 202 (1947); *Pueblo* v. *Blanco*, 77 D.P.R. 767, 781 (1954); *Pueblo* v. *De León*, 102 D.P.R. 446, 449–50 (1974).

*Se confirma la sentencia apelada.*

El Juez Asociado Señor Negrón García concurre con el resultado.