# 97 DTA 101

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL IV DE MAYAGUEZ Y AGUADILLA**

EL PUEBLO DE PUERTO RICO
Apelado

v.

ALBERTO IRIZARRY LIQUET
Apelante

Núm. KLAN-95-00574

San Juan, Puerto Rico, a 30 de abril de 1997

Panel integrado por su presidente, el Juez Brau Ramírez,
el Juez Colón Birriel y la Juez Feliciano de Bonilla

Brau Ramírez, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

**I**

El apelante Alberto Irizarry Liquet fue acusado ante el Tribunal de Primera Instancia, Sala Superior de Mayaguez, por tentativa de violación técnica, arts. 99, 100, 26 y 27 del Código Penal de Puerto Rico, 33 L.P.R.A. secs. 4061, 4062, 3121 y 3122, respectivamente, con relación a hechos ocurridos el 22 de octubre de 1992 en Maricao, Puerto Rico, contra la menor de edad L.M.T.S., hija de su compañera consensual.

Luego de un juicio por jurado, fue declarado culpable por el delito imputado. El 4 de mayo de

1995, el Tribunal lo sentenció a una pena de siete (7) años y seis (6) meses de prisión. El Tribunal le concedió los beneficios de una sentencia suspendida.

Confirmamos.

## II

Según se desprende del récord, durante el juicio el Ministerio Público presentó como testigos de cargo a la menor perjudicada, L. M. T. S., al Dr. Rafael Méndez Rodríguez, a la Sra. Eufemia Rivera Rivera, al Sr. Jaime Reteguis Ortiz y al Policía Gilberto Rivera Beltrán.

La menor L. M. T. S., declaró que para el 20 de octubre de 1992, cuando tenía trece (13) años de edad, vivía en una casa ubicada en el Barrio Pueblo Nuevo, en Maricao, Puerto Rico junto con sus tres (3) hermanos, menores que ella, y junto a su madre, la Sra. Bernalda Soto Vázquez, y el *"esposo"* de esta última, el apelante Alberto Irizarry Liquet.

Testificó que ese día su madre se dirigió al hospital porque estaba de parto. Indicó que cuando anocheció, sus hermanos se fueron a dormir a un cuarto que tenía tres (3) camas literas. Posteriormente, ella se dirigió al suyo en el cual dormía sola. Declaró que, mientras estaba durmiendo, el acusado entró a su cuarto, se le trepó encima, le subió la bata y le bajó los *"panties"*, y que a pesar de que ella forcejeó, éste le *"entró el pene en la cosa"* sintiendo mucho dolor y una cosa babosa en la vagina. Luego de este incidente, el acusado se marchó del cuarto y ella se quedó llorando en su cama.

Al día siguiente, su madre regresó del hospital, y la testigo le contó únicamente que el apelante había entrado a su cuarto en la noche del día anterior. La testigo declaró que al momento del juicio vivía con su hermana Evelyn Torres en el Barrio Montoso, de Maricao.

Durante el contrainterrogatorio, la perjudicada declaró que Adamaris Irizarry, la hija del apelante, no se encontraba durmiendo en su cuarto la noche en que ocurrieron los hechos en cuestión. Declaró además, que dicho cuarto está ubicado frente a la sala de la casa.

El Dr. Méndez Rodríguez declaró que para el año 1994 trabajaba en el Centro Médico de Mayaguez como ginecólogo evaluando los casos de violación y tentativa de violación. Testificó que el 22 de septiembre de dicho año, la perjudicada llegó a la Sala de Emergencias del mencionado Centro Médico, junto con la Sra. Rivera Rivera, quien le informó que la menor había sido violada. Procedió a entrevistar a la perjudicada quien le indicó que, mientras su madre se encontraba de parto, su *"padrastro"* le tocó los genitales, le quitó la ropa y la violó. Que la menor añadió, que *"los genitales masculinos fueron puestos en sus genitales femeninos y que, debido a que sintió dolor, creyó que había sido violada"*.

Méndez Rodríguez declaró que realizó la correspondiente evaluación física a la perjudicada encontrando que el himen de ésta estaba intacto. Indicó, que además de la mencionada evaluación física, a la perjudicada se le hicieron pruebas de laboratorio sobre embarazo, SIDA, VDRL y sífilis resultando todas negativas.

Durante el contrainterrogatorio, el Dr. Méndez Rodríguez declaró que, como no se acuerda de todos los pacientes que visitan la Sala de Emergencias del Centro Médico por alegado abuso sexual, prepara un informe para poder recordar cada caso. Que en el caso de la aquí perjudicada preparó el correspondiente informe indicando que *"la niña había sido violada por su padrastro"* aunque más adelante señala que su himen estaba intacto. Añadió que es posible que una mujer penetrada conserve su himen intacto cuando dicho himen es elástico. Sin embargo, no podía determinar si el himen de la perjudicada era de dicho tipo.

La Sra. Eufemia Rivera Rivera declaró que llevaba trabajando como técnica de la Oficina de Servicios a la Familia del Departamento de Servicios Sociales en Maricao, Puerto Rico, desde hacía once (11) meses y que había investigado bastantes casos de abuso sexual. Testificó que, el 8 de septiembre de 1994, recibió un referido de su supervisor, el Sr. Jaime Reteguis Ortiz, sobre un caso de alegado abuso sexual contra la menor L.M.T.S. por parte de su *"padrastro"*.

La testigo indicó que, el 12 de septiembre de 1994 visitó, junto con el Sr. Reteguis Ortiz, la Escuela Raúl Ybarra donde estudiaba la perjudicada y que entrevistó a esta última allí. Aunque al principio, la menor se mostró temerosa y muy callada, luego le relató que el 20 de octubre de 1992, aproximadamente a las 9:00 p.m., su *"padrastro"* entró a su cuarto con el pretexto de que iba a buscar unas *"chanclas"*, se le tiró encima y trató de abusar de ella. Que le contó todo lo sucedido a su madre pero ésta no le hizo caso para evitar problemas en la corte.

La testigo también declaró que, posteriormente, citó a la madre de la perjudicada para entrevistarla pero ésta no quiso cooperar. Testificó que, aunque acompañó a la menor al Centro Médico de Mayaguez, no estuvo presente durante la evaluación física que realizó el Dr. Méndez Rodríguez, quien le informó que la *"niña no fue deflorada"* y que además, ésta le había expresado *"se que soy señorita pero lo que digo es verdad"*. Indicó que preparó un informe que recogía todo lo declarado por ella en la corte, y que posteriormente recomendó la remoción de la menor del hogar, a lo que la madre no se opuso.

Durante el contrainterrogatorio, la Sra. Rivera Rivera declaró que en la entrevista la menor le indicó que había sido violada; y que a Servicios Sociales lo que llegó fue un referido por violación.

Luego de terminar el testimonio de la Sra. Rivera Rivera, la defensa solicitó al tribunal *a quo* la disolución del jurado y el sobreseimiento del proceso contra el acusado amparándose en la Regla 38 (d) de Procedimiento Criminal de Puerto Rico, 34 L.P.R.A. Ap. II, R. 38, y del art. 100 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4062. Alegó que el apelante había sido acusado por violación técnica en grado de tentativa, mientras la prueba del Ministerio Público había tendido a establecer la consumación del delito lo que, conforme a la Regla 38(d), constituia una enmienda perjudicial del pliego acusatorio que requería la disolución del jurado y el sobreseimiento del proceso. Insistió que toda la prueba presentada por el Ministerio Fiscal demostraba que había habido penetración, por leve que fuera, y que, por consiguiente, la misma tendía a establecer el delito de violación, no el delito menor incluido de tentativa de violación técnica.

El Tribunal de Primera Instancia declaró No Ha Lugar la mencionada solicitud, concluyendo que la prueba justificaba un proceso por el delito de tentativa de violación técnica; que la Regla 38(d) no aplicaba al presente caso; y que resultaba beneficioso para el acusado estar siendo procesado por un delito menos severo que el que la prueba tendía a establecer.

El Ministerio Fiscal procedió entonces a presentar como su próximo testigo al Sr. Jaime Reteguis Ortiz quien declaró que la Oficina de Servicios a la Familia del Departamento de Servicios Sociales de Maricao había recibido una llamada telefónica anónima notificándole que una menor, de nombre Luz, había sido víctima de violación por parte de su *"padrastro"*, mientras se encontraba en su hogar y su madre, de nombre Bernalda, estaba de parto en el hospital. Que la perjudicada le conto según lo sucedido a su madre y ésta le dijo que no quería problemas con la corte. Que la menor había bajado las notas en la escuela y que sus amigos lo sabían. Testificó que le refirió el caso a la Sra. Rivera Rivera y que aprobó el informe que ésta preparó.

Durante el contrainterrogatorio, el Tribunal de Primera Instancia celebró una vista bajo la Regla 9 de Evidencia, 32 L.P.R.A. Ap. IV, R. 9, para dilucidar la solicitud de la defensa de realizar ciertas preguntas referentes a, si con anterioridad a la mencionada investigación realizada por la Oficina de Servicios a la Familia, la Sra. Mildred Pujols, técnica de dicha oficina, había realizado una investigación sobre un alegado caso de abuso sexual contra la menor L.M.T.S. por parte de su padre biológico. A preguntas tanto de la defensa como del Juez de Instancia, y en ausencia del jurado, el Sr. Reteguis Ortiz declaró que no tenía conocimiento de una querella sobre abuso sexual similar a la del presente caso. Declaró además, que no habló con la Sra. Pujols, a quien supervisaba para el año 1991, sobre una querella contra el padre biológico de la perjudicada por alegado abuso sexual.

El Ministerio Público presentó como último testigo al Policía Rivera Beltrán quien declaró que investigó la querella sobre abuso sexual presentada por el Departamento de Servicios Sociales de Maricao con respecto a la menor L.M.T.S. Que entrevistó a la perjudicada al día siguiente de recibir la llamada de dicho Departamento, y que, posteriormente, preparó un informe del caso. Testificó que, posteriormente, entrevistó al apelante y éste negó todos los hechos alegados por la menor. Indicó que

también entrevistó a la madre de la perjudicada y que ésta se mostró muy negativa. Procedió a presentar el caso ante Fiscalía, y por orden del Fiscal Muñiz se realizó un exámen médico a la menor en el Centro Médico de Mayaguez, luego del cual se levantó un expediente del caso por tentativa de violación y actos lascivos.

Luego de presentado el testimonio del Policía Rivera Beltrán, la defensa nuevamente presentó su solicitud de disolución del jurado y sobreseimiento del proceso en contra del acusado. Solicitó además, la absolución perentoria del cargo imputado debido a que el Ministerio Fiscal no presentó prueba respecto a la edad de la menor perjudicada al momento de los hechos. El Tribunal de Primera Instancia declaró No Ha Lugar dicha solicitud.

La defensa presentó como testigos al apelante, a la Srta. Adamaris Irizarry Sepúlveda y al Sr. Salvador Sepúlveda González.

El apelante declaró que el 20 de octubre de 1992, debido a que su esposa estaba de parto, la llevó al Centro de Salud de Maricao y de allí la refirieron al Centro Médico de Mayaguez. Testificó que, antes de llevar a su esposa a dicho Centro Médico, fue a su casa ubicada en el Barrio Pueblo Nuevo de Maricao y le informó a sus cuatro (4) hijos lo que estaba ocurriendo con su madre. Indicó que estuvo en el hospital hasta tarde en la noche y que regresó a su casa aproximadamente a las 11:00 p.m. Observó que en la sala de la casa estaba el Sr. Sepúlveda González y que antes de acostarse hablaron por un rato. Insistió que lo alegado por la menor era totalmente falso.

Durante el contrainterrogatorio, el apelante declaró que tenía derecho a ver los hijos de su primer matrimonio, Adamaris Irizarry Sepúlveda y José Iván Sepúlveda, los fines de semana. Que el 20 de octubre de 1992 los mandó a buscar, a pesar de que no le correspondía verlos, debido a que hacía mucho tiempo que no los veía.

La Srta. Adamaris Irizarry Sepúlveda declaró que en la noche del 20 de octubre de 1992 llegó, junto con su hermano, José Irizarry Sepúlveda y su tío, el Sr. Sepúlveda González, conocido como *"Chavelo"*, a la casa del apelante. Testificó que esa noche durmió en el cuarto de la perjudicada. Indicó que su padre llegó a la casa tarde en la noche y que lo escuchó conversando con su tío. Declaró además, que su padre no entró al cuarto de Luz.

Durante el contrainterrogatorio, la Srta. Sepúlveda declaró que la perjudicada le informó en la escuela que supuestamente hacía cinco (5) días su padre la había violado, y lo que ella respondió que *"eso era un embuste"*.

La defensa presentó como último testigo al Sr. Sepúlveda González quien declaró que es el hermano de la ex-esposa del apelante. Testificó que el 20 de octubre de 1992 fue a buscar a Adamaris y a José al pueblo de Guánica para llevarlos a la casa de su ex-cuñado en Maricao y que llegaron aproximadamente a las 10:00 p.m. Observó que en dicha casa se encontraban la perjudicada y sus tres (3) hermanos, y que la primera les informó que el apelante estaba con Bernalda en el hospital. Indicó que el apelante llegó más tarde, y que, luego de conversar con él un rato, éste se fue a su cuarto a dormir. Declaró además que, si alguien hubiese abierto la puerta del cuarto de Luz, él lo hubiera escuchado pues el durmió esa noche en el sofá de la sala.

Durante el contrainterrogatorio, el Sr. Sepúlveda Rodríguez declaró que tomó un carro público para llegar a la casa del apelante y que era la primera vez que utilizaba dicho medio de transportación para llevarle sus hijos.

Concluida la presentación de la prueba de la defensa y sometido el caso, el jurado rindió un veredicto de culpabilidad procediendo posteriormente el Tribunal de Primera Instancia a imponer al apelante la pena antes mencionada.

Inconforme con esta determinación, el apelante recurrió a este Tribunal.

## III
En su recurso, el apelante alega que erró el Tribunal de Primera Instancia al declararlo culpable en

virtud de una prueba que no estableció su culpabilidad más allá de duda razonable y al declarar No Ha Lugar su solicitud de disolución del jurado y el sobreseimiento del caso al amparo de la Regla 38(d) de Procedimiento Criminal.

El Art. II Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico consagra en nuestro ordenamiento la presunción de inocencia de todo acusado, exigiendo que toda convicción siempre esté sostenida por prueba que establezca la culpabilidad del acusado más allá de duda razonable. Véanse *Pueblo v. Rosaly Soto,* ___ D.P.R. ___ (1991), **91 J.T.S. 62,** a la pág. 8749. No es necesario, sin embargo, destruir *"toda duda posible, especulativa o imaginaria"* a los fines de establecer la culpabilidad del acusado. Es suficiente que el fallo del tribunal esté sostenido por prueba suficiente y satisfactoria, que establezca certeza y convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. *Pueblo v. Cabán Torres,* 117 D.P.R. 645, 653 (1986), *Pueblo v. Bigio Pastrana,* 116 D.P.R. 748, 761 (1985).

La duda razonable es aquella insatisfacción o intranquilidad en la conciencia del juzgador de los hechos sobre la culpabilidad del acusado, una vez desfilada la totalidad de la prueba presentada por el ministerio fiscal. *Pueblo v. Torres Rivera,* ___ D.P.R. ___ (1991), **91 J.T.S. 82,** a la pág. 8977; *Pueblo v. Toro Rosas,* 89 D.P.R. 169, 175 (1963).

Aunque la determinación sobre la culpabilidad de un acusado es una cuestión mixta de hecho y de derecho, *Pueblo v. Lydia Echevarría,* ___ D.P.R. ___ (1991), **91 J.T.S. 43,** a la pág. 8567; *Pueblo v. Cabán Torres,* 117 D.P.R. a la pág. 655, el tribunal apelativo concede gran deferencia a la determinación que hace el juzgador de los hechos a nivel de instancia y de ordinario no interviene con la misma en ausencia de pasión, perjuicio o error manifiesto. *Pueblo v. Somarriba García,* ___ D.P.R. (1992), **92 J.T.S. 109,** a la pág. 9869; *Pueblo v. Maisonave Rodríguez,* ___ D.P.R. ___ (1991), **91 J.T.S. 67,** a la pág. 8838; *Pueblo v. Lydia Echevarría,* **91 J.T.S. 43,** a la pág. 8567.

En el presente caso, el apelante fue declarado culpable por tentativa de violación técnica contra la menor L.M.T.S., hija de su compañera consensual. El art. 100 del Código Penal, 33 L.P.R.A. sec. 4062, define el delito de violación como el ultraje inferido a la persona y sentimientos de la mujer. En el aspecto físico, la emisión no es necesaria y bastará para consumarlo cualquier penetración sexual por leve que fuere. Los elementos del delito son tener relación sexual, con una mujer que no es su esposa, sin su consentimiento o mediante un consentimiento viciado.

El art. 99 del Código Penal, 33 L.P.R.A. sec. 4061, configura, en su inciso (a), como violación técnica el acceso carnal con una mujer que no fuere la propia, menor de catorce (14) años de edad. Bajo esta modalidad, es impertinente si la mujer prestó o no el consentimiento puesto que la ley presume falta de consentimiento por razón de inmadurez sicológica o falta de capacidad legal para prestarlo. *Pueblo v. Rivera Robles,* 121 D.P.R. 858, 873 (1988); véase además, *Pueblo v. Pérez Rivera,* ___ D.P.R. ___ (1991), **91 J.T.S. 80,** a la pág. 8966.

Por su parte, el art. 26, 33 L.P.R.A. sec. 3121, establece que existe tentativa cuando la persona realiza acciones o incurre en omisiones inequívocamente dirigidas a la ejecución de un delito, el cual no se consuma por circunstancias ajenas a su voluntad. La pena asignada a la tentativa, según el art. 27, 33 L.P.R.A. sec. 3122, es una mitad de la pena señalada para el delito consumado, no pudiendo, sin embargo, exceder de diez (10) años la pena máxima para este delito.

En el caso de autos, opinamos que la prueba desfilada tiende a sostener el fallo del Tribunal de Primera Instancia. El jurado concedió entero crédito a la versión de la menor perjudicada, de que el apelante había intentado sostener relaciones sexuales con ella, y a las declaraciones vertidas por el Dr. Méndez Rodríguez y la Sra. Rivera Rivera. Este Tribunal carece de los elementos de juicio para sustituir la apreciación de la prueba llevada a cabo por el jurado. El testimonio de los testigos mencionados era suficiente, de haber sido creído por el jurado, para establecer los hechos imputados, conforme la Regla 10(d) de las de Evidencia. Véase *Pueblo v. Rodríguez Román, supra,* **91 J.T.S. 26,** a la pág. 8475. Contrario a lo que alega el apelante, las inconsistencias en el testimonio de estos testigos no requerían que los mismo fuesen descartados por el jurado. Véase *Pueblo v. Pagán Santiago,* ___ D.P.R. ___ (1992), **92 J.T.S. 56,** a la pág. 9481; *Pueblo v. Espinet Pagán, 1*12 D.P.R. 531 (1982).

El apelante también alega que la prueba de cargo tendía a demostrar que el delito cometido fue el de violación técnica y no el de tentativa de violación técnica imputado en la acusación. Alega que dicha incongruencia entre las alegaciones y la prueba conllevaban la disolución del jurado y el sobreseimiento del proceso conforme a la Regla 38(d) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 38(d).

El debido proceso de ley exige que el acusado esté adecuadamente informado de la naturaleza y extensión del delito que se le imputa. *Pueblo v. González Olivencia*, 116 D.P.R. 614, 617-618 (1985). Este requisito se cumple con una acusación o denuncia que incluya una exposición de los hechos esenciales constitutivos del delito redactada en lenguaje sencillo claro y conciso. *Id.*, véanse además, *Pueblo v. Villafañe Fabián*, ___ D.P.R. ___ (1995), **95 J.T.S. 132,** a la pág. 125, *Pueblo v. Narváez Narváez,* 122 D.P.R. 80, 87-88 (1988), *Pueblo v. Calviño Cereijo,* 110 D.P.R. 691, 693 (1981). La Regla 38(d) de Procedimiento Criminal establece el procedimiento a seguirse cuando surgen incongruencias entre las alegaciones o pliego acusatorio y la prueba presentada por el Ministerio Público. A esos efectos dicha Regla dispone lo siguiente:

*"(d) **Incongruencia entre las alegaciones y la prueba.** El tribunal podrá permitir enmiendas a la acusación, a la denuncia o a un escrito de especificaciones en cualquier momento antes de la convicción o absolución del acusado, en caso de que hubiere incongruencia entre las alegaciones y la prueba. La incongruencia o desacuerdo entre las alegaciones y la prueba no será fundamento para la absolución del acusado; pero el tribunal, siempre que el acusado no se opusiere, deberá posponer el juicio si es de opinión que los derechos sustanciales del acusado se han perjudicado, para celebrarlo ante otro jurado o ante el mismo tribunal si el juicio no fuere por jurado, y según el tribunal determinare la incongruencia o desacuerdo es de tal naturaleza que la prueba estableciere un delito distinto del imputado, no incluido en éste, o estableciere la comisión de un delito fuera de la competencia del tribunal, se deberá disolver el jurado y sobreseerá el proceso."*

El propósito que persigue el citado precepto es evitar que se malogre la administración de la justicia pero salvaguardando, a su vez, los derechos de un acusado a tener un juicio imparcial y justo con amplia oportunidad de preparar su defensa. Véase, *Ríos Mora v. Tribunal Superior*, 95 D.P.R. 117, 123-124 (1967).

Ahora bien, la incongruencia entre las alegaciones y la prueba provoca la disolución del jurado y el sobreseimiento del procedimiento contemplado por la Regla 38(d) únicamente si se perjudican los derechos sustanciales del acusado. Tal perjuicio no se produce por regla general a menos que la incongruencia sea de tal orden que la prueba establezca la comisión de un delito distinto no incluido impidiendo u obstaculizando de modo significativo la preparación de la defensa o exponiendo al acusado a la posibilidad de ser enjuiciado dos veces por el mismo delito. *Pueblo v. Santiago Cedeño,* 106 D.P.R. 663, 667 (1978); véase además, *Pueblo v. Flores Betancourt,* 124 D.P.R. 867, 883-884 (1989), *Pueblo v. Matos Pretto,* 93 D.P.R. 113, 117-121 (1966). En el caso ante nos, no encontramos divergencia, incongruencia o desacuerdo entre lo alegado en la acusación y la prueba presentada por el Ministerio Fiscal. Contrario a lo alegado por el apelante, la prueba no estableció un delito distinto no incluido al de tentativa de violación técnica imputado en la acusación. Surge del testimonio y del informe preparado por el Dr. Méndez Rodríguez con respecto al examen médico que le practicó a la menor, que su himen estaba intacto confirmando la teoría de la fiscalía de que no se llegó a consumar la violación. En adición, surge del propio testimonio de la menor, evidencia también creída por el jurado, que ésta forcejeó con el acusado evitando que éste lograra su intención de violarla.

Aún si se considerase que la prueba del Ministerio Público tendió a establecer que el delito se había consumado, coincidiríamos con la Ilustrada Sala apelada en que esta situación no necesariamente conllevaba la disolución del jurado. Es importante señalar que el Tribunal no tomó esta prueba como una enmienda a la acusación sino que el jurado fue instruido únicamente por el delito originalmente imputado al apelante y el veredicto fue emitido por este delito.

La prueba de consumación no necesariamente resultaba *"incongruente"* con la alegación de tentativa, ya que este último era un delito menor incluido en el delito imputado, según sucede en todos los casos de tentativa con relación al delito principal. La situación, según señalara el Tribunal de Primera Instancia, en todo caso resultaba beneficiosa para el apelante puesto que se le estaba

procesando por un delito menos severo que el de violación técnica.

El Tribunal Supremo de Puerto Rico ha resuelto, en situaciones análogas, que el hecho de que la prueba en un caso establezca un delito mayor a aquél por el cual el acusado resultó convicto, basado en una interpretación errónea de la ley, no da lugar a la revocación del fallo, puesto que este tipo de error no es perjudicial para el acusado. Véanse *Pueblo v. Colón Soto,* 109 D.P.R. 545, 550 (1980); *Pueblo v. De León,* 102 D.P.R. 446, 449-450 (1974); *Pueblo v. Rivera,* 67 D.P.R. 194, 202 (1947). Entendemos que el error no se cometió.

Por los fundamentos expuestos se confirma la sentencia apelada.

Lo pronunció y manda el Tribunal y lo certifica la Señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General