# 2004 DTA 119

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE PONCE**

EL PUEBLO DE PUERTO RICO
Apelado

v.

JORGE J. RUTTELL MEDINA
Apelante

Núm. KLAN-03-00023

San Juan, Puerto Rico, a 25 de junio de 2004

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Aponte Hernández y la Juez Pabón Charneco

Brau Ramírez, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

**I**

El apelante, Jorge Ruttell Medina, recurre de una sentencia dictada el 6 de diciembre de 2002 por el Tribunal

de Primera Instancia, Sala de Ponce, que lo declaró culpable de los delitos de falsificación de licencia, 33 L.P.R. A. sec. 4595, y de práctica ilegal de la podiatría, 20 L.P.R.A. sec. 2864.

Las acusaciones están relacionadas a hechos ocurridos en Ponce el 13 de febrero de 2001. Al apelante se le imputó haber practicado la podiatría sin contar con la licencia requerida por la Ley Núm. 170 de 20 de julio de 1979, 20 L.P.R.A. secs. 2852 y ss., habiendo falsificado un certificado inexistente que lo autorizaba a ejercer dicha profesión.

Luego de un juicio por tribunal de derecho, el foro recurrido lo halló culpable de los cargos y lo sentenció a penas concurrentes de 6 años de cárcel por falsificación y 1 año de cárcel por práctica ilegal de la podiatría, con el beneficio de la suspensión de la sentencia.

Confirmamos.

## II

Según se desprende del récord, la vista en su fondo del caso se celebró por Tribunal de Derecho durante los meses de agosto y septiembre de 2002.

En la vista declararon, por parte del Ministerio Público, los testigos Moraima Cruz Delgado, Francisco Soto, Carlos Santana Rabell, el Dr. Vincent Walsh, el Dr. Roberto Sánchez Córdova y Mario Ortiz Molina.

La defensa presentó a los testigos Dr. Norman Torres, Lcda. Ana Nisi Goyco, Olga Marín de Mercado y al apelante, Jorge Ruttell Medina.

La primera testigo, Moraima Cruz Delgado, declaró que es inspectora de la División de Drogas y Narcóticos de la Administración de Servicios de Salud Mental y Contra la Adicción ("*ASSMCA*"). La Sra. Cruz declaró que, como parte de su trabajo, ella inspeccionaba los doctores que están registrados en la División de Drogas y Narcóticos, para verificar que cumplían con los requisitos que establece la Ley de Sustancias Controladas. La testigo también trabajaba como encubierta en operativos que tengan que ver con sustancias controladas.

El 13 de febrero de 2003 y por instrucciones del Sr. Luis Meléndez, Director de la División de Drogas y Narcóticos, la testigo se dirigió al Centro de Diagnóstico y Tratamiento ("*CDT*") de la Playa de Ponce como encubierta, para hacer un trabajo con relación al apelante.

Le preguntó a una enfermera si había algún médico que la pudiera atender, pues tenía una dolencia en el pie. La enfermera la refirió al apelante y le instruyó a que llenara el récord médico para que la pudiesen atender. La testigo llenó la documentación requerida. Le indicaron que regresara a las 2:00 p.m.

Cuando regresó y la llamaron, se dirigió a una oficina que tenía en la parte inferior de la puerta un número 7 y decía "*Dr. Jorge Ruttell, enfermedades de los pies*". La testigo entró en compañía del inspector Francisco Soto quien se hizo pasar por su esposo.

El apelante estaba en la oficina y atendió a la testigo. Le preguntó si era diabética o padecía de alguna enfermedad, a lo que ella contestó que no. Luego el apelante le preguntó que cuál era su molestia y ella le dijo que tenía una cosita debajo del pie que le molestaba. El apelante le examinó el pie y le dijo que era una pequeña callosidad, pero que eso se podía resolver rápidamente.

El apelante le limpió el área con un desinfectante conocido como Betadine y automáticamente tomó un bisturí "*con el propósito, pues, de abrirme*", dijo la testigo. Esta le preguntó al apelante que qué él iba a hacer y

el apelante le dijo que iba a tratar de sacarla, a lo que ella se negó.

El apelante le dijo que no fuera cobarde, que no le iba a doler. Él le halaba la pierna para un lado y ella se la halaba para el otro. La testigo le dijo que tenía una entrevista de trabajo por la tarde y que no podría ir con un vendaje. Ante la negativa de la testigo, el apelante le dijo que le pondría un anestético local para que se le fuera el dolor del callo. Le puso un vendaje para sostener la gasa. La testigo indicó que tuvo el vendaje puesto hasta que llegó a la División de Drogas y le tomó una foto.

Antes de irse del consultorio, el inspector Soto le dijo al apelante que tenía problemas para dormir, que si le podía recetar algo. El apelante le dijo que él no podía recetar porque no tenía las licencias necesarias, pero que no se preocupara que él iba donde otro médico compañero que le hiciera la receta. El apelante regresó con la receta, la cual estaba firmada por el Dr. Nilso Heredia.

Durante el rato que pasó en la oficina del apelante, la testigo observó que había bisturí, pinzas, líquido desinfectante, todo lo necesario para hacer pequeñas cirugías.

Al momento de ir al CDT como encubierta, la testigo no conocía de ninguna querella formal contra el apelante.

El próximo testigo en declarar fue el inspector de sustancias controladas Francisco Soto. Declaró que se le encomendó ir al CDT porque había una querella en la División de que el apelante estaba ejerciendo la podiatría, a pesar de que tenían información de que el apelante no estaba autorizado a ejercer dicha profesión.

Declaró que en la puerta con el número 7 hay un letrero que dice "*Dr. Rutell, Podiatra*". Confirmó que se hizo pasar por Francisco Rivera Soto, que él y su compañera inspectora se cambiaron los últimos números del seguro social, que le indicaron al apelante que no tenían plan médico y que venían de Estados Unidos.

Declaró que el apelante le dijo a Moraima que se sentara, que éste se puso unos guantes y le chequeó el pie. Que le meneó el pie de ambos lados y que sacó una bandeja de bisturí y Moraima le dijo que no. Que el apelante sacó el bisturí, pues entendía que era algo ambulatorio, sencillito, que él iba a raspar porque eso se podía raspar.

El apelante cogió el pie de Moraima e intentó rasparle, pero ella le dijo que no porque iba para una entrevista de trabajo, ya que habían llegado hacía poco tiempo de Estados Unidos. El apelante le dijo a Moraima que no fuera cobarde, que "*no te va a pasar nada, esto es ambulatorio*". Pidieron que les diera una cita para una fecha posterior porque estaban tarde para la entrevista.

El testigo explicó que Moraima se negó a que le rasparan el pie, porque sabía que el apelante no era doctor. Ella meneaba el pie de lado a lado para que el apelante no interviniera. El apelante desistió y le puso una banda en el pie.

Entonces, el testigo le dijo al apelante que si le podía recetar un medicamento para dormir, llamado Ambien, porque no estaba pudiendo dormir. El apelante le dijo que no tenía licencia para recetar medicamentos controlados, pero que le iba a ayudar. Salió del consultorio y regresó con una receta. La receta decía "*Ambien*" y tenía el nombre del doctor Heredia.

En el contrainterrogatorio, el testigo expresó que le indicaron que había una querella contra el apelante, pero no sabía de quién. Desconocía si el apelante había sido juzgado hace 10 años por esos mismos hechos. Declaró que no corroboró si el apelante tenía licencia expedida por el Gobierno de Puerto Rico. Que el compañero Mario Ortiz levantó la data del caso y se comunicó con la Junta de Podiatras y verificó que dos

personas tenían el mismo número de licencia.

El testigo expresó que él fue quien desarrolló el plan de hacerse pasar como matrimonio. Atestó que el apelante no utilizó el instrumento en el pie de Moraima y que no extirpó piel o callosidad.

El testigo no sabía si el apelante tenía, para la fecha de la intervención, una licencia de cirujano menor.

En el redirecto por el Ministerio Público, el testigo declaró que Mario Ortiz había hecho toda la inteligencia relacionada a ese trabajo, visitar las diferentes juntas de podiatras, contactar a varios testigos y verificar con el doctor Walsh, que es el que tiene el número de licencia. De ahí surgen los motivos para intervenir.

A preguntas de la defensa aceptó que en el caso no hay desvío de drogas. Con anterioridad a los hechos, el apelante tenía licencia para recetar controlados. La última licencia del apelante a esos fines expiró el 30 de junio de 1990. Expresó que a nadie que no sea médico, farmacia u hospital se le da esa licencia.

El próximo testigo fue Carlos Santana Rabell, director de las Juntas Examinadoras del Departamento de Salud desde hace veinte años. Se dedica, entre otras cosas, a poner en vigor las leyes y reglamentos de cada una de las juntas examinadoras. Como parte de ese proceso se ofrecen exámenes de reválida y se le otorga licencia a los profesionales que la soliciten y cualifiquen para ella.

Señaló que la Ley Núm. 170 de 20 de julio de 1979 regula la práctica de la podiatría. Anteriormente la Ley de 1961 adscribía la posición de podiatra al Departamento de Salud bajo la supervisión del Tribunal Médico, pero en 1979 se puso a funcionar una junta independiente.

Explicó que los podiatras, para tener una licencia, necesitan una preparación, un doctorado en podiatría de una universidad que esté acreditada por la Junta Examinadora o por el Consejo de Educación Superior. Existe una Asociación Americana de Podiatría que también regula las universidades o las acredita. Son alrededor de ocho escuelas acreditadas en Estados Unidos que están acreditadas en Puerto Rico. En Puerto Rico no hay un programa de podiatría.

Dijo conocer al apelante porque éste había solicitado en varias ocasiones poder ejercer como podiatra en la Isla, que había un expediente que le había hecho y que había sometido evidencia.

Declaró que el apelante había solicitado licencia y reválida por segunda vez en 1986, para ejercer la podiatría. Habló de una primera solicitud que hiciera el apelante en 1961, la cual alegadamente le fue denegada mediante carta de 23 de enero de 1962. Durante la vista, las partes aceptaron marcar dicha carta como exhibit 10 por estipulación. El Juez observó que no había constancia de que la carta se le envió al apelante. La defensa argumentó lo mismo.

La carta reflejaba que la solicitud de licencia del apelante de 1961 fue denegada.

La solicitud de 1986 fue evaluada por la Junta Examinadora de Podiatras y ésta entendió nuevamente que el apelante no cualificaba para obtener su licencia y le rechazó la solicitud. La razón para la decisión fue que el United American Medical College, escuela donde el apelante estudió podiatría, no estaba acreditada por el "Council of Podiatry Education of American Podiatry Association". Esto se le notificó al apelante mediante carta de 16 de mayo de 1986.

Luego de que enviaran dicha carta, el testigo no conoce de ninguna solicitud de reconsideración que se haya sometido.

A solicitud de Fiscalía, prepararon una certificación negativa, con sello y firma de la Junta, de que el apelante no está autorizado para ejercer como podiatra en Puerto Rico.

Explicó que hay dos tipos de documentos que se expiden por las juntas examinadoras, uno es la licencia como tal, que autoriza a la persona a ejercer la profesión. Además, cada tres años, la persona tiene que recertificar la licencia con cursos de educación continua. Entonces se le expide un documento donde se certifica que ese profesional cumplió con los cursos y que puede seguir ejerciendo.

El Ministerio Público presentó un documento que se marcó como exhibit 6, por estipulación de las partes. Dicho documento está supuestamente expedido por la Oficina de Reglamentación y Certificación de Profesionales de la Salud del Departamento de Salud y tiene fecha de 29 de junio de 1998. El título del mismo es *"Certificado de Registro y Educación Continua"*. El documento lee que *"este profesional cumplió con los requisitos de registro de licencia y educación continuada..."*. En la parte inferior izquierda tiene el nombre Dr. Jorge Ruttell y la dirección postal de éste. En la parte inferior derecha, dice *"Prof. Podiatra, Lic. 000082"* indicando la profesión y el número de licencia. Debajo de lo anterior aparece una firma y debajo de la firma lee *"Director Ejecutivo o Representante Autorizado"*, pero no indica nombre.

A preguntas del Fiscal sobre si esa era su firma, el testigo contestó que esa aparentaba ser su firma, pero no lo era. Se le pidió al testigo que se acercara a la pizarra, que tomara una tiza y escribiera su firma. El Fiscal le preguntó que qué, si algo, le faltaba a la firma que estaba en el documento y el testigo contestó que la letra *"a"*. Dijo que se parece en la forma de hacer la *"c"*, pero no en la forma en que hace los trazos.

Dijo que ese documento él nunca lo firmó porque ese tipo de documento se expidió en una ocasión para 1993, que generalmente se envía una tarjeta y para esa fecha no había la tarjeta y se usó ese documento, pero que eso se hacía en otra división que no era la de él y que él no estaba encargado de firmar esos documentos.

El testigo aclaró que el apelante tenía una licencia de Auxiliar Técnico de Cirugía y que esa licencia era la número 82, con fecha de 6 de agosto de 1963. Que es el Dr. Walsh quien tiene la licencia número 82 como médico podiatra.

El testigo fue confrontado con otros dos documentos. El primero es un papel verde, que establece que el apelante está autorizado como Auxiliar Técnico de Cirugía (exh. 7 por estipulación). El segundo documento es una fotocopia que dice *"Podiatrist"* (exhibit 4). Ambos documentos están certificados por el Sr. Herminio Méndez para el 29 de agosto de 1963 y en ambos aparece el número 82.

En el documento verde, según explicó el testigo, aparece el sello de Auxiliar Técnico de Cirugía, y en la fotocopia aparece una imagen de un sello que el testigo dijo se parece al del documento verde.

En el documento verde se lee que quien lo autoriza es *"The Board of Surgical Technical Aid of Puerto Rico"* y en el otro aparece que expide la licencia el *"Board of Medical Examiners of Puerto Rico"*. Ambos documentos aparentemente autorizan al apelante, a ejercer, respectivamente, la profesión de técnico auxiliar de cirugía y la podiatría, ambos bajo el número de licencia 82.

A preguntas del Ministerio Público, declaró que para que el Departamento de Salud pueda expedir una Tarjeta de Certificación y Registro, la persona tiene que poseer una licencia, la cual se renueva cada tres años. El testigo leyó la tarjeta de Certificación y Registro del apelante, que indicaba el nombre de éste y la fecha de expiración: licencia núm. 82 de 31 de julio de 1989. Dijo que la misma aparenta ser una copia de la original.

Explicó el testigo que en 1986, el apelante llenó un formulario de registro en la oficina, e indicó que su licencia de podiatra era la número 82. De la oficina se le expidió la tarjeta. Posteriormente, al apelante se le

pidió, mediante carta certificada con acuse de recibo, que devolviera la misma. La fecha de la carta es de 1 de diciembre de 1989. La misma lee:

*"Por este medio, le comunicamos que al revisar su expediente encontramos que por error administrativo se le expidió una certificación como Podiatra.*

*De acuerdo a nuestros archivos, usted no posee una licencia de podiatría, ya que estudió en una escuela no reconocida. ...*

*[S]e le comunica que su certificación como médico podiatra queda revocada y que cualquier actuación de su parte al tratar de ejercer la profesión ... estará en violación de la Ley 170 de 20 de julio de 1979. ...".*

El testigo aclaró que a todas las personas que poseían una licencia de cualquier tipo se les enviaba un formulario que debían llenar, para que se les expidiera una tarjeta como que estaba recertificado para ejercer la profesión que fuera. Al apelante se le debió haber enviado el formulario para que lo llenara como Auxiliar Técnico de Cirugía, que era la única licencia que tenía.

Dijo que el apelante hizo dos solicitudes como podiatra, una de ellas en 1961 donde solicitó acogerse al *"Grandfather Clause"*, que permitía se le convalidara su experiencia como podiatra. Dicha solicitud fue denegada por el Tribunal Examinador de Médicos, que no le aceptó su evidencia de experiencia. La segunda solicitud fue en 1986.

Durante el contrainterrogatorio, el testigo señaló que el apelante aparentemente cumplía con los requisitos exigidos por el *"Grandfather Clause"*.

Dijo que según su percepción, el documento de 6 de agosto de 1963 donde el *"Board of Medical Examiners"* le otorga al apelante la licencia número 82 como podiatra, está alterado.

El próximo testigo en declarar fue el Dr. Vincent Walsh, podiatra desde 1977. Declaró que un compañero podiatra de Ponce le dijo que su número de licencia, el 82, estaba siendo utilizado por otra persona para practicar la podiatría. Igualmente, en una reunión de la Sociedad de Podiatras, varios compañeros de Ponce le dijeron lo mismo. Un compañero, el Dr. Vidal, le envió por fax una receta en papel timbrado con el nombre del apelante, en la cual se describía como doctor en podiatría. En la misma se recetaba un medicamento para hongo en las uñas. Al lado de la firma, la cual no pertenecía al Dr. Walsh, estaba el supuesto número de licencia del firmante, el número 82.

El Dr. Walsh señaló que tiene licencia expedida por la Junta Examinadora de Podiatras de Puerto Rico desde 1997, año en que pasó la reválida requerida para practicar la podiatría en la Isla. En esa fecha se le entregó además un certificado de registro de licencia permanente.

Para poder ejercer como podiatra, tuvo que cursar estudios en *"Barry University School of Podiatric Medicine"*. Tuvo que presentar además sus certificados de los *"boards"* nacionales, parte uno y parte dos, así como evidencia de que estaba cursando una residencia en cirugía, especializada en cirugía del pie.

Dijo que los cursos que tuvo que tomar como podiatra fueron 2 años de ciencias básicas y cursos de especialización en medicina podiátrica. Que les hacían rotaciones por los diferentes departamentos y experiencias clínicas.

El testigo reiteró que la firma que aparece en la receta con el número 82, no es la suya.

Testificó que siempre ha tenido el 82 como número de licencia, desde el primer día, y nunca se le ha cambiado. Que ese número sigue con la persona, porque a los que se van graduando se le dan números nuevos. Identificó la Tarjeta de Certificación que le da el Departamento de Salud, en la cual aparece el número 82 junto a su número de Seguro Social.

El Dr. Walsh declaró que tiene licencia para recetar fármacos, otorgada por ASSMCA, y otra por el Drug Enforcement Agency (*"DEA"*), que es federal.

En el contrainterrogatorio dijo que la licencia la otorga la Junta Examinadora de Médicos Podiatras de Puerto Rico, y que dicha junta le dio el número 82. Que nunca ha tenido una licencia número 82 otorgada por la Junta Examinadora de Médicos de Puerto Rico. Que vio una licencia expedida por dicha junta a favor del apelante, pero no como podiatra. Aceptó que antes de la Ley de 1979, había algún número de podiatras en que los números fueron asignados en orden cronológico.

El Dr. Roberto Sánchez Córdova, Presidente de la Junta Examinadora de Médicos Podiatras, fue el siguiente en prestar su testimonio. Es doctor en medicina y además en medicina podiátrica.

La Junta Examinadora de Médicos Podiatras rige dicha profesión en Puerto Rico desde 1979. A los que ejercían como podiatras antes de esa fecha se le pedía un título de graduación de la universidad. Se acogían al *"Grandfather Clause"*, a base de la documentación que presentaban de que tenían el entrenamiento apropiado para practicar la profesión en la Isla. Después de 1979, cuando se establece la práctica de la podiatría en la Isla, la misma se rige por la práctica de dicha profesión en los Estados Unidos.

Declaró que el apelante no está reconocido como médico podiatra en Puerto Rico y que a la Junta se le hizo una querella de que había una persona trabajando en Ponce desde hacía 40 años. Entiende que en un pasado se le había hecho una querella. Que esta persona estaba trabajando ilegalmente desde hacía mucho tiempo, utilizando la licencia número 82, la cual se le había otorgado al Dr. Walsh. Que él dijo que eso no podía ser posible porque todas las licencias se otorgan en orden ascendente desde el número uno hasta el que venga, según van pasando las reválidas.

Dijo que fue confrontado con una carta de Certificación y Registro, la cual no era un documento original, que decía que el apelante era un médico podiatra con la licencia número 82 y que él dijo que eso no era cierto porque la licencia número 82, la había firmado él. Dijo que en el 1962 o el 1963, la licencia número 82 no existía. Que cuando él llega a la Junta, esa licencia no existía, entonces empezaron a investigar.

Concluyeron que el documento que se le otorgó al apelante como Asistente de Sala de Operaciones, al ser el mismo formulario para todas las profesiones y que lo que se cambiaba era la profesión, el número de licencia y la persona que lo firma, pues que alguien había falsificado la profesión.

Dijo que en una búsqueda en el expediente del apelante encontraron unas cartas en donde éste había solicitado la práctica de la profesión en Puerto Rico. Solicitó su licencia o tomar el examen, pero se le denegó porque la documentación presentada no era la requerida. Se encontró otra carta donde el Lcdo. Carlos Santana le denegó por segunda vez la licencia al apelante porque no tenía los requisitos que se pedían en Puerto Rico.

En esa segunda carta se le denegó la licencia porque no cumplía con los requisitos que la Junta Examinadora solicitaba. Dijo que el apelante estaba practicando la podiatría y se anunciaba como podiatra en Ponce.

El testigo admitió que hubo una Tarjeta de Certificación y Registro que se le envió por equivocación al apelante y en la cual decía la palabra *"podiatra"*. Fue por equivocación, porque si se le envía una carta de

denegación de su profesión, no se le puede enviar una Tarjeta de Certificación y Registro.

El testigo indicó que para recetar sustancias controladas hay que tener 2 licencias, una estatal otorgada por ASSMCA y una federal del DEA.

Explicó que al apelante nunca se le ha extendido licencia porque nunca ha sometido un crédito de educación continuada, nunca ha sometido estudios post-graduados. Dijo que no podía haber otra licencia número 82. Que no se le puede cambiar el número 82 al Dr. Walsh porque éste tuvo su examen y el número que se le otorga es ese.

Aceptó que los podiatras que estaban ejerciendo en virtud del *"Grandfather Clause"* no tuvieron que tomar el examen por la Junta Examinadora de Médicos.

Declaró que en el 1986, el apelante solicitó examen para practicar la podiatría en Puerto Rico, la cual fue denegada porque la universidad donde estudió el apelante no estaba reconocida por el *"Council of Podiatry Education of American Podiatry Association"*. Señaló que en 1990, la Junta Examinadora presentó un caso contra el apelante por practicar la podiatría ilegalmente en Puerto Rico y que dicho caso fue archivado.

A preguntas de la juez, el testigo añadió que antes de 1979 había médicos podiatras licenciados bajo el Tribunal Examinador de Médicos y que luego de ese año, las licencias las comienza a otorgar la Junta Examinadora de Podiatras que es autónoma. Los números de las licencias fueron continuos desde antes de 1979 y después de ese año. Puso como ejemplo que si para el 1979 se habían otorgado 30 licencias, pues del 1979 en adelante seguía la licencia 31.

Explicó que el requisito de haberse graduado de una de las siete universidades acreditadas para poder ejercer la podiatría es impuesto por el Consejo de Educación Superior de los Estados Unidos. Al no haber universidades de medicina podiátrica en la Isla, se sigue la misma línea de acreditación del Consejo de Educación Superior de Estados Unidos.

Afirmó que, aparte de los que se acogieron al *"Grandfather Clause"*, todos los podiatras licenciados que practican en la Isla tienen que haberse graduado de una de las siete universidades acreditadas.

El próximo testigo en declarar fue Mario Ortiz Molina, Inspector de Drogas y Narcóticos para ASSMCA. Parte de sus funciones de ASSMCA es investigar todas las instituciones profesionales registradas con ellos.

Se le asignó la investigación del CDT de la Playa de Ponce y en el área de farmacia surgió una recopilación de datos de recetas en donde salió a relucir el apelante. Luego de recopilar la información acudieron a la Oficina de Reglamentación y Certificación de profesionales de la Salud, y ahí el señor Rabell, donde solicitaba una certificación de la licencia 82 que supuestamente pertenecía al apelante. Dijo que se les entregó un documento donde esa licencia 82 pertenecía a otro médico del cual dijo no recordar el nombre en ese momento.

Luego compartió labores con Moraima Cruz Soto y Franciso Soto para realizar el trabajo de encubiertos en el CDT de la Playa de Ponce.

El testigo reafirmó que Moraima Cruz fue tratada por el apelante, quien se identificó como podiatra. Dijo que el apelante tuvo licencia para recetar sustancias controladas, pero que le fue revocada porque no pudo mostrar documentos para que le fuera renovada. Declaró que nunca tuvo acceso a la oficina del apelante para verificar si él recetaba o no. Actualmente, el apelante no tiene dicha licencia.

Declaró que tiene conocimiento de que el apelante ejerce como médico ilegalmente.

En el contrainterrogatorio, el testigo admitió que nunca ha tenido querella contra el apelante por haber expedido sustancias controladas sin receta. Aceptó que el apelante tuvo la licencia para expendio de sustancias controladas y que la misma se le da a los médicos que han revalidado y tienen una licencia del Colegio de Médicos de Puerto Rico. Que al apelante no se le renovó esa licencia porque no tenía la licencia de la Junta Examinadora de Podiatras.

Dijo que el apelante no aparece en ningún tipo de receta de sustancias controladas. Que se le presentaron cargos por prescribir sustancias controladas. No pudo decir que hay una querella que diera lugar a la investigación, sino que se recibió una confidencia.

En la inspección de la farmacia del CDT había recetas no narcóticas del apelante.

Con este testimonio terminó el desfile de prueba del Ministerio Público.

La defensa presentó al Dr. Norman Torres, quien conoce al apelante hace 23 años. Es presidente de la Facultad Médica y Dental del CDT de la Playa de Ponce. A requerimiento suyo, el apelante le inyectó un medicamento para los espuelones. Calificó la labor del apelante como excelente.

La farmacéutica Lcda. Ana Nisi Goyco, quien trabaja en el CDT de la playa de Ponce desde 1995, declaró que las recetas que hace el apelante son de Tylenol y de Periboro, que son unas inmersiones en sales para quitar la hinchazón. No recuerda que el apelante recetara sustancias controladas y no conoce querella contra éste, el cual era muy querido por los pacientes del CDT. En el contrainterrogatorio dijo que el apelante está bien cualificado, pero que nunca ha visto el documento que lo autoriza a ejercer como podiatra.

Olga Marín de Mercado, Oficial de Personal del CDT desde hace 22 años, dijo que nunca ha recibido carta del Departamento de Salud que le indique que el apelante no puede ejercer como podiatra. Que recibió una carta de 18 de enero de 2002 donde le preguntaban si el apelante trabajaba para su institución.

Que al momento de ella declarar, el apelante desempeñaba labores clericales debido a que los visitaron de Drogas y Narcóticos en mayo de 2001 y les informaron que estaban investigando y que el apelante no podía ejercer la podiatría.

Que las personas trajeron una orden de Fiscalía para que entregara las recetas del apelante y se sacó copia de la licencia de él y del Registro de Profesionales. Declaró que entregó copia de las recetas que el apelante hacía a los pacientes y que las originales están en la farmacia del CDT.

Para 1996 se solicitó a la Junta Examinadora de Médicos una licencia de "good standing" del apelante, en la cual aparece si su licencia ha sido revocada o no. Se envió la solicitud por correo y la Junta contestó que no era con ellos, sino con otra junta, a la cual la testigo se comunicó varias veces y no obtuvo información.

En 1998, la testigo intentó nuevamente investigar sobre la licencia del apelante y ni siquiera le contestaron. Se hizo un pago de $25 junto con la solicitud y aún no han contestado.

En ningún momento, la Junta de Podiatras se ha comunicado con ella en relación al apelante. Dijo que el señor Mario Ortiz estuvo en su oficina y que una señora lo acompañaba. Dijo que no ha tenido contacto con el Sr. Carlos Santana Rabell ni con el Dr. Roberto Sánchez.

Atestó que en 1995 hubo una intervención con el apelante.

En el contrainterrogatorio declaró que nunca le contestaron de la Junta de Podiatras. Dijo tener copia del

diploma y el Registro de Profesionales que avala la legalidad del apelante de ejercer como podiatra, que los originales los tiene el apelante. Que ella fue la que sacó esas copias y que recuerda cuando lo hizo.

Al ser confrontada con el Certificado de la Junta Examinadora de Auxiliar Técnico de Cirugía, dijo que era distinto al documento que ella tenía que decía *"Podiatrist"*. Que la copia del certificado de registro era igual, pero en cuanto a la copia de la Certificación por la Junta Examinadora de Podiatras, dijo que no eran las mismas.

Dijo que la evidencia de la licencia del apelante que ella tenía era el Registro de Profesionales de 2001 y que dejaron en manos de éste conseguir el certificado de *"good standing"*. Cuando le preguntaban al apelante, él decía que lo había solicitado, pero que no le habían contestado.

El último testigo en declarar fue el apelante, Jorge Ruttell.

Declaró que empezó a ejercer la podiatría en 1957 en el Hospital Tricoche como auxiliar de podiatría ya que no había podiatras en Puerto Rico. Luego trabajó en el hospital municipal de Santa Isabel como podiatra auxiliar.

Durante esos años, además de ser auxiliar de podiatría, hacía curaciones, suturaba, porque para ese tiempo había cogido el examen de Auxiliar Técnico de Cirugía. Ese examen lo daba el Colegio de Cirujanos Menores. Dijo que para 1961, no le habían contestado sobre el examen.

Para ese año salió un anuncio en el periódico, donde se aludía al *"Grandfather Clase"* de la Ley Núm. 79 de 21 de junio de 1961 y entendió que cualificaba para acogerse a la misma porque estaba ejerciendo la profesión sin licencia, pero uno de los requisitos era que estuviera trabajando como podiatra por más de tres años. A esos efectos, dio una declaración jurada.

Envió un expediente a la Junta Examinadora de Médicos, porque los podiatras no estaban regulados en Puerto Rico.

Dijo que pasó el tiempo y no le contestaban. Entonces consultó con el licenciado Escribano. Fue a la Junta Examinadora de Médicos acompañado del licenciado Mojica y de Robledo, que era alcalde del Municipio de Santa Isabel para aquel entonces.

Allí se reunieron con el señor Herminio Méndez Herrera, Secretario General de la Junta Examinadora de Puerto Rico, y hubo una vista en donde el licenciado Mojica hizo las alegaciones.

Entonces, el señor Méndez mandó a que la licencia de cirujano menor del apelante, que este aún no sabía que existía, le fuera convalidada a la de podiatra. Méndez le ordenó a la secretaria que le convalidara la licencia que ya le habían otorgado al apelante de Auxiliar Técnico de Cirugía y le entregaron la licencia número 82. Ambas licencias, la de cirujano menor y la de podiatra son de 6 de agosto de 1963, con fecha de sello y firma de 29 de agosto de 1963.

Aceptó que no era imprescindible haber ido a la reunión acompañado del Alcalde.

El apelante declaró que luego de que le dieron la licencia siguió trabajando y después se fue a trabajar a la Policía para chequeos de los pies, porque los que tenían pie plano no cualificaban para entrar a la Policía.

En 1974, el apelante comenzó estudios de podiatría en el United American Medical College, en Nueva Orleans, Louisiana, los cuales terminó en 1977. Allí recibió el grado de doctor en podiatría. Para ese momento

Dijo que el señor Méndez convalidó la licencia porque tenía los poderes, ya que el apelante había reunido los requisitos de la Ley Núm. 79. Que el diploma de cirujano menor lo expidió la Junta Examinadora de Técnicos de Cirugía Menor.

Luego de que se crea la Junta Examinadora de Podiatras en 1979, el apelante envió sus documentos y solicitó que lo aceptaran como miembro de la Asociación de Podiatras de Puerto Rico, pero no le contestaron.

Después, en una carta de 29 de diciembre de 1989, el señor Rabell le comunicó al apelante que no cualificaba porque la escuela donde había estudiado no estaba reconocida por la Junta Examinadora de Podiatras. El apelante había radicado una solicitud a dicha junta para coger la reválida de podiatría, la cual le fue denegada por las razones antes mencionadas.

El testigo dijo que en esa segunda comunicación, la directora de la Junta para ese momento, le dijo que erróneamente le habían enviado una licencia de podiatra con fecha de 16 de marzo de 1989.

Dijo que la única razón que le daban para no cualificar era que su escuela no estaba acreditada. Afirmó haber cumplido siempre con los requisitos de tomar cursos de educación continuada. Atestó que nunca ha tenido casos de mala práctica.

Declaró que luego de graduado de podiatría hizo un año de internado gratuito en el CDT de Ponce. Luego del año crearon la plaza de podiatra y le dieron un part-time. Allí ha laborado durante los últimos 24 años.

El testigo identificó unas licencias para dispensar sustancias controladas que le fueron otorgadas por el Departamento de Servicios Contra la Adicción ("*DESCA*"), que es actualmente ASSMCA. Las licencias corresponden a los años 1989 y 1990.

Dijo que después de 1990, no se le ha expedido otra licencia de ese tipo porque él llena lo de educación continua y lo envía y nunca le contestan. Que eso se renueva cada año y la federal cada tres años.

Testificó que le sometieron un caso en el 1989 por expedir recetas con drogas sin tener licencia. Afirmó que en ese año él sí tenía licencia.

Aceptó que para 1995 se le descontinuó la licencia para prescribir sustancias controladas, pero nunca se le ha prohibido recetar fármacos. Que solicitó se le renovara la licencia para prescribir fármacos controlados, pero no se lo concedieron porque la escuela donde estudió no estaba reconocida por la Junta Examindora de Podiatras.

Admitió que en ningún momento la Junta Examinadora de Podiatras le adjudicó que podía fungir como podiatra en la Isla y que ante esto decidió seguir ejerciendo porque esa licencia se la había dado la Junta Examinadora de Médicos.

El testigo fue confrontado con un documento, el cual dijo no haber visto nunca hasta este momento. Identificó que mediante el documento, la Junta de Técnicos Cirujanos de Puerto Rico le otorgaba la licencia 82 a su nombre, el 6 de agosto de 1963. Es una licencia de cirujano menor, con fecha de 29 de agosto de 1963.

El testigo fue confrontado con un segundo documento, con fecha de 29 de agosto de 1963, el cual el apelante identificó como que mediante el mismo, la Junta Examinadora de Médicos le otorga el título de podiatra. Dijo que ese documento lo recibió por correo.

El testigo aceptó que anterior al 1998, le habían informado que no podía ejercer como podiatra. Que la Junta de Podiatras no quiso reconocer la escuela adonde él había estudiado. Por ello, el testigo dijo que tuvo que buscar su antiguo refugio que era la Junta Examinadora de Médicos.

Declaró que desde que lo acusaron, se encuentra haciendo trabajo clerical en el CDT de Ponce. Que siente que es injusto que no se le haya aceptado porque la escuela no estaba reconocida, porque él se graduó antes de que se formara la Junta Examinadora de Podiatras.

Que para poder seguir ejerciendo como podiatra, siguió con la Junta Examinadora de Médicos y ahí le enviaban educación continua.

Que hubo una vez que en señor Rabell le envió una certificación como podiatra, eso fue en 1995, que posterior a eso, le dijeron que no podía ejercer como podiatra, que había sido un error. Dijo que ellos le dijeron eso, pero que no le estaban cancelando la licencia 82, porque esa se la había dado la Junta Examinadora de Médicos.

Que hay dos licencias 82, la de él, que expidió el Tribunal Examinador de Médicos y la del Dr. Walsh.

Afirmó que tiene con la Junta de Podiatras una licencia 82 con la cual estuvo ejerciendo la podiatría en Puerto Rico. Declaró que él no dice que si hay otro número 82 en la Junta de Podiatras es un error porque le pertenece a él, sino que esa licencia se la dio la Junta Examinadora de Médicos hasta hoy.

En el redirecto, dijo que lo que le mandó la Junta Examinadora de Podiatras fue una certificación de educación continua, una tarjetita. Que dicha junta no le envió una licencia, sino una certificación, que la mandó el señor Rabell. Dijo que no sabe si ese señor es de la Junta Examinadora de Podiatras.

Aceptó que nunca la Junta Examinadora de Podiatras le envió una licencia o algún documento.

A preguntas de la Jueza, contestó que la Junta de Podiatras le está diciendo que no puede ejercer la podiatría desde que él solicitó que se le convalidara la licencia, como para 1986.

Contestó que desconoce dónde está el original del documento que lo acredita como podiatra. Que entiende que lo tiene Olga Mercado, en el hospital donde él ejerce. Que vio el documento por última vez en el 2001, luego no lo ha visto porque en el hospital, una vez lo acusaron, lo sacaron de podiatra y eso lo echaron en unas cajas. Que fue a recogerlas dos meses después, y fue a recoger la oficina y se lo habían cogido.

Con esto concluyó la prueba presentada durante la vista en su fondo.

A base de la prueba desfilada, el Tribunal declaró culpable al apelante de los delitos imputados.

El apelante solicitó que se dictara sentencia con atenuantes, por no tener el apelante antecedentes, gozar de buena reputación en la comunidad, ser padre de familia y no haber mediado violencia alguna en la comisión de los delitos. El Tribunal acogió dicha solicitud.

El 6 de diciembre de 2002, el Tribunal dictó sentencia, condenando al apelante a cumplir una pena de cárcel con atenuantes de 6 años por el delito de falsificación de licencia y una pena de un año de cárcel por el delito de práctica ilegal de la podiatría, a cumplirse concurrentemente. El Tribunal concedió al apelante el beneficio de la suspensión de su sentencia.

Insatisfecho, el apelante acudió ante este tribunal mediante recurso de apelación.

## III

En su recurso, el apelante plantea que el Tribunal de Primera Instancia erró al declararlo culpable de los delitos imputados, sin reconocer los derechos previamente adquiridos por él al ejercicio de su profesión.

La Sección 11 del Art. II de la Constitución de Puerto Rico consagra la garantía a todo acusado de un delito de que se le presuma inocente, debiendo establecerse su culpabilidad más allá de duda razonable. *Pueblo v. Irizarry*, 156 D.P.R. ___ (2002), **2002 J.T.S. 68**, a la pág. 1,108; *Pueblo v. González Román*, 138 D.P.R. 691, 707 (1995); *Pueblo v. Rosaly Soto*, 128 D.P.R. 729, 739 (1991); véase, además, 34 L.P.R.A. sec. 2222.

El peso corresponde al Estado para establecer, más allá de duda razonable, los elementos del delito imputado, así como la conexión del acusado con los hechos y la intención o negligencia de éste. *Pueblo v. Irizarry*, **2002 J.T.S. 68**, a la pág. 1,109; *Pueblo v. Acevedo Estrada*, 150 D.P.R. 84, 99 (2000).

La prueba requerida no sólo tiene que ser suficiente en derecho, sino que debe ser satisfactoria, esto es, capaz de producir *"certeza o convicción moral en una conciencia exenta de preocupación o en un á nimo no prevenido"*. *Pueblo v. Acevedo Estrada*, 150 D.P.R. a la pág. 100; *Pueblo v. González Román,* 138 D.P.R. a la pág. 707; *Pueblo v. Cabán Torres*, 117 D.P.R. 645, 652 (1986).

La duda razonable, según ha aclarado el Tribunal Supremo de Puerto Rico, es aquella insatisfacción o intranquilidad en la conciencia del juzgador sobre la culpabilidad del acusado una vez desfilada la prueba. *Pueblo v. Torres Rivera*, 129 D.P.R. 331, 341 (1991).

Esto no implica que deba destruirse toda duda posible, sea especulativa o imaginaria, ni que la culpabilidad del acusado tenga que establecerse con certeza matemática. *Pueblo v. Rosario Reyes,* 138 D.P.R. 591, 598 (1995); *Pueblo v. Pagán, Ortiz*, 130 D.P.R. 470, 480 (1992); *Pueblo v. Bigio Pastrana*, 116 D.P.R. 748, 761 (1985). Sólo se exige que la prueba brinde la certeza moral que convence, dirige la inteligencia y satisface la razón. *Id.*

No obstante, en los casos de que la prueba no establezca la culpabilidad más allá de duda razonable, no puede prevalecer una sentencia condenatoria. *Pueblo v. Acevedo Estrada*, 150 D.P.R. a la pág. 101; *Pueblo v. González Román*, 138 D.P.R. a la pág. 708; *Pueblo v. Maisonave Rodríguez,* 129 D.P.R. 49, 63 (1991).

En tales circunstancias, la revisión de la determinación sobre culpabilidad del acusado se considera una cuestión de derecho. *Pueblo v. Acevedo Estrada*, 150 D.P.R. a la pág. 100; *Pueblo v. González Román*, 138 D.P.R. a la pág. 708; *Pueblo v. Cabán Torres*, 117 D.P.R. a las págs. 653.

En el caso de autos, el apelante fue declarado culpable de infringir el Art. 14 de la Ley Núm. 170 de 20 de julio de 1979, 20 L.P.R.A. sec. 2864, que gobierna el ejercicio de la podiatría en Puerto Rico.

Como es sabido, las personas en nuestra jurisdicción no gozan de un derecho absoluto al ejercicio de su profesión u oficio. Este tipo de actividad está subordinadas al poder de reglamentación del Estado (*"police power"*), para proteger la salud y el bienestar público, y evitar el fraude y la incompetencia. *Torres Acosta v. Junta Examinadora de Ingenieros*, ___ D.P.R. ___ (2004), **2004 J.T.S. 71**, a la pág. 970; *San Miguel Lorenzana v. E.L.A.,* 134 D.P.R. 405, 413 (1993); *Colegio Ing. Agrim. P.R. v. A.A.A.,* 131 D.P.R. 735, 763 (1992).

El Estado tiene amplia facultad para sujetar el derecho a practicar una profesión, al requisito previo de obtener una licencia, permiso o certificado previo de alguna entidad u oficial examinador. *Torres Acosta v. Junta Examinadora de Ingenieros*, **2004 J.T.S. 71**, a la pág. 970; *Colegio Ing. Agrim. P.R. v. A.A.A.,* 131 D.P.R. a la pág. 763.

Uno de los aspectos incluidos en este tipo de reglamentación es el de los requisitos para la admisión al ejercicio de la profesión, lo que incluye *"la comprobación de conocimientos indispensables y la necesaria solvencia moral del candidato"*. *Torres Acosta v. Junta Examinadora de Ingenieros*, **2004 J.T.S. 71**, a la pág. 970; *De Paz Lisk v. Aponte Roque*, 124 D.P.R. 472, 490 (1989); *San Miguel Lorenzana v. E.L.A.*, 134 D.P.R. a la pág. 413.

Estos requisitos no privan a los ciudadanos de sus profesiones, sino que las regulan por razón del eminente interés público de que están revestidas. *Torres Acosta v. Junta Examinadora de Ingenieros*, **2004 J.T.S. 71**, a la pág. 970; *Asoc. Drs. Med. Cui. Salud v. Morales*, 132 D.P.R. 567, 586; *Román v. Trib. Exam. de Médicos*, 116 D.P.R. 71, 77 (1985).

En el caso de la podiatría, la citada Ley Núm. 170 de 20 de julio de 1979, establece numerosos requisitos para poder ejercer dicha profesión en Puerto Rico.

En particular, la Ley requiere que toda persona que interese ejercer dicha profesión cuente con una licencia, debidamente expedida por las autoridades. 20 L.P.R.A. sec. 2860.

Para implementar este requisito, la Ley crea la Junta Examinadora de Médicos Podiatras, adscrita a la División de Juntas Examinadoras del Departamento de Salud. 20 L.P.R.A. sec. 2852. ■

Dicha Junta tiene la facultad y obligación de, entre otras cosas, *"[a]utorizar el ejercicio de la profesión de medicina podiátrica"*, *"[e]stablecer los requisitos y mecanismos necesarios para la recertificación, cada tres (3) años, de los profesionales en base a educación continuada"*, y *"[e]stablecer los requisitos y mecanismos necesarios para el registro cada tres (3) años de las licencias regulares y provisionales que otorgue"*. 20 L.P.R.A. sec. 2853.

Los requisitos estatutarios para obtener una licencia como médico podiatra en Puerto Rico son, en lo pertinente:

*"(a) Poseer un diploma o título de Doctor en Medicina Podiátrica, expedido por una escuela o colegio de medicina podiátrica, aprobado y reconocido por el Consejo de Educación en Medicina Podiátrica de los Estados Unidos, la Asociación Americana Nacional de Medicina Podiátrica, el Departamento de Salud de los Estados Unidos y la Junta. El curso de estudios será de no menos de cuatro (4) años;*

*(b) haber aprobado los exámenes a que se refiere la sec. 2858 de este título;*

*(c) haber aprobado satisfactoriamente los Exámenes Nacionales de Medicina Podiátrica, parte I y II (National Board of Podiatric Examiners);*

*(d) haber completado un programa de Residencia Postgraduado, acreditado por el Consejo de Educación en Medicina Podiátrica de los Estados Unidos, en un hospital acreditado por dicha organización con un mínimo de un (1) año continuo de educación o haber practicado la medicina podiátrica con una licencia válida en cualquier estado de los Estados Unidos de Norteamérica por un mínimo de cinco (5) años consecutivos en el mismo lugar."*

20 L.P.R.A. sec. 2860.

La Ley Núm. 170 autoriza a la Junta denegar una licencia a un aspirante, cuando, entre otras circunstancias, el aspirante no cumple con los requisitos establecidos por la Ley. 20 L.P.R.A. sec. 2865.

La Ley dispone que incurrirá en práctica ilegal de la podiatría toda persona que, sin poseer licencia expedida por la Junta Examinadora de Médicos Podiatras, ofreciera servicios como tal, o se anunciase como que ofrece dichos servicios y pretendiere estar capacitada para diagnosticar, tratar, prevenir o cuidar enfermedades o afecciones de los pies. 20 L.P.R.A. sec. 2863.

El Art. 14 de la Ley castiga específicamente a toda persona que *"[p]ractique ilegalmente la medicina podiátrica en Puerto Rico"*, así como que *"use el título 'doctor en podiatría', 'doctor en medicina podiátrica' o cualquier abreviatura de éste, sólo o asociado en otros términos, con el propósito de ofrecer servicios o solicitar pacientes, sin estar autorizado legalmente a ejercer como médico-podiatra en Puerto Rico"* o que *"se anuncie, ofrezca o preste servicios o use cualquier término relacionado con una especialidad en medicina podiátrica sin estar debidamente certificado como tal por la Junta"*. 20 L.P.R.A. sec. 2864.

Las penalidades por dichas infracciones incluyen pena de cárcel por tres años o multa no mayor de $15,000.00. De mediar circunstancias agravantes, la pena puede ser aumentada hasta un máximo de cinco (5) años; de mediar circunstancias atenuantes, puede ser reducida hasta un mínimo de un (1) año. 20 L.P.R.A. sec. 2864.

En la situación de autos, no existe controversia real en torno a que, a la fecha de los hechos, el apelante no contaba con una licencia para ejercer la podiatría expedida por la Junta Examinadora creada por la Ley Núm. 170. El apelante estaba consciente de ese hecho, por cuanto presentó dos solicitudes separadas a dicha Junta para la obtención de una licencia, en 1961 y en 1986, las cuales le fueron denegadas.

El apelante alega que él había adquirido el derecho a trabajar como podiatra previo a la adopción de la Ley Núm. 170. Plantea que él comenzó a laborar en enfermedades de los pies desde 1957 en el Hospital Tricoche de Ponce, que luego se trasladó al Hospital Municipal de Santa Isabel, donde rendía idéntica labor. El apelante señala que recibió una licencia de técnico de cirugía el 6 de agosto de 1963.

Según su versión de los hechos, el apelante se acogió al *"Grandfather Clause"* establecido por el Art. 24 de la Ley Núm. 97 de 21 de junio de 1961, que reglamentó el ejercicio de la podiatría. Dicho artículo disponía que:

*"[D]entro de los 90 días después de la aprobación de ésta ley, toda persona que haya ejercido la quiropodia o podiatría en Puerto Rico por un período mayor de 18 meses, podrá solicitar por escrito una licencia del tribunal Examinador de Médicos, quien vendrá obligado a extenderla sin examen, siempre y cuando la evidencia presentada compruebe la competencia profesional del solicitante y disponiéndose que las solicitudes cubiertas bajo este artículo podrán ser radicadas ante la Junta Examinadora de Médicos."*

El apelante alega que él se acogió a dicho procedimiento y que compareció adonde el Sr. Herminio Herrera, en unión al Lcdo. Aguedo Mojica y el Alcalde del Pueblo de Santa Isabel, Sr. Francisco Robledo. En esa ocasión, asevera el apelante, se le indicó que se le convalidaría su licencia de cirujano menor a la de podiatra y se le concedió la licencia número 82.

El Tribunal de Primera Instancia, según hemos visto, escuchó la versión del apelante y rechazó la misma. No estamos en posición de sustituir dicha apreciación.

La norma, según se conoce, es que la apreciación de la prueba llevada a cabo por el Tribunal de Primera Instancia merece deferencia y que la misma no habrá de ser modificada en ausencia de pasión, prejuicio o error manifiesto. *Pueblo v. Somarriba García*, 131 D.P.R. 462, 472 (1992); *Pueblo v. Maisonave Rodríguez*, 129 D. P.R. a las págs. 62-63; *Pueblo v. Echevarría Rodríguez I*, 128 D.P.R. 299, 316 (1991).

Dicha postura responde que a que el juzgador de los hechos, quien tiene la oportunidad de observar y

escuchar a los testigos, está en una posición superior a la de este foro para aquilatar la prueba. *Pueblo v. Acevedo Estrada*, 150 D.P.R. a la pág. 99; *Pueblo v. Rosario Reyes*, 138 D.P.R. a las págs. 598-599; *Pueblo v. Cabán Torres*, 117 D.P.R. a las págs. 653-654.

En el caso de autos, no entendemos que la apreciación del Tribunal apelado sobre este asunto resultara claramente errónea. Lo cierto es que no existe récord alguno de que el apelante hubiera sido autorizado a ejercer la profesión de la podiatría. Al contrario, se desprende que la primera solicitud del apelante, cursada en 1961, fue denegada por el Tribunal Examinador de Médicos, quien entendió entonces que el apelante no estaba cualificado para acogerse al *"Grandfather Clause"*. No surge que el apelante hubiera cuestionado dicha actuación.

En su recurso, el apelante expone que no fue sino hasta 1977, muchos años después, que obtuvo un doctorado en Podiatría en el United American College. Este grado, sin embargo, no fue reconocido por la Junta, por no tratarse de una institución acreditada. En mayo 1986, la Junta rechazó una segunda solicitud del apelante de que se le concediera una licencia de podiatra.

El apelante no niega haber cursado dicha solicitud, cuyo original fue admitido en evidencia. Se infiere de dicha actuación que el apelante, en efecto, conocía que para esa fecha él no tenía una licencia para ejercer la podiatría en Puerto Rico, lo que es inconsistente con su versión de los hechos.

El apelante tenía una licencia como auxiliar técnico de cirugía (exhibit 7 por estipulación), la cual tenía asignado el número 82, pero dicha licencia no lo autorizaba para ejercer la profesión de podiatra.

También se presentó copia de una tarjeta de certificación y registro expedida a su nombre el 31 de julio de 1989 (exhibit 4 por estipulación). El testigo Carlos Santana Rabell, director de las Juntas Examinadoras del Departamento de Salud, explicó que dicha tarjeta le fue enviada al apelante por error. El testigo explicó que a las personas que poseían algún tipo de licencia se les enviaba un formulario. El apelante aparentemente llenó el de él incorrectamente, reclamando que tenía la licencia 82 de podiatría. Al apelante se le escribió una carta el 1ro. de diciembre de 1989, alertándolo de lo anterior, y reiterándole que él no tenía licencia alguna de podiatría. El apelante tampoco replicó a dicha comunicación.

La tarjeta mencionada es un documento distinto al exhibit 6 por estipulación, el cual es el documento que dio lugar al cargo por falsificación. Dicho documento, según hemos visto, supuestamente era un *"Certificado de Registro y Educación Continua"* emitido a favor del apelante el 29 de junio de 1998 por la Oficina de Reglamentación y Certificación de Profesionales de la Salud del Departamento de Salud que acreditaba que el apelante gozaba de una licencia de podiatría, a la que se había asignado el número 82. Dicha información resultaba contraria a los récords de la agencia. El Sr. Santana Rabell declaró que no era su firma la que aparecía en el documento.

El señor Santana Rabell explicó que ese tipo de documento se había utilizado en 1993, pero que para 1998 lo que se entregaba era una tarjeta.

El testimonio del apelante de que nunca había falsificado ningún documento y de que el certificado había sido firmado por el señor Santana Rabell, no mereció la credibilidad del Tribunal de Primera Instancia.

El Art. 275 del Código Penal castiga a toda persona que:

*"con la intención defraudar a otra o al Estado, falsamente hiciere, alterare, falsificare, o imitare cualquier licencia, certificado, diploma, récord u otro documento de naturaleza análoga que tuviere que ser expedido por un funcionario, agencia, dependencia o instrumentalidad del Estado Libre Asociado de Puerto Rico, o por*

*cualquier institución privada autorizada para expedirlo, o que con la intención de defraudar a otra persona o al Estado poseyere, circulare, publicare, pasare, o tratare de pasar como genuino y verdadero cualquier licencia, certificado, diploma, récord o cualquier documento de naturaleza análoga que tuviere que ser expedido por un funcionario, agencia, dependencia, o instrumentalidad del Estado Libre Asociado de Puerto Rico, o por cualquier institución privada autorizada para expedirlo, a sabiendas de que el mismo es falso, alterado, falsificado o imitado...".*

33 L.P.R.A. sec. 4595.

Dicho delito es grave, y conlleva multas de hasta $15,000.00 o una pena fija de 9 años de cárcel, o ambas penas, a discreción del Tribunal. De mediar circunstancias agravantes, el Tribunal puede aumentar la pena a 14 años de prisión o multa de $20,000.00. De mediar atenuantes, el Tribunal puede reducir la pena a seis años, como en el caso de autos, o imponer una multa de hasta $10,000.00.

El apelante se queja de que fue declarado culpable sin que se demostrara que hubo el elemento de intención de defraudar. ▪

La norma general es que nadie puede ser responsabilizado por una acción u omisión que ha sido tipificada previamente como delito si la misma no se realiza con intención criminal. Véase, art. 14, Código Penal de Puerto Rico, 33 L.P.R.A. 3061; *Pueblo v. Flores Betancourt*, 124 D.P.R. 867, 875 (1989).

La intención criminal, según se conoce, se manifiesta por las circunstancias relacionadas con el delito, y el sano juicio y discreción del acusado. Una intención maliciosa y criminal se presume por la manera y deliberación con que se intente o cometa un acto ilegal con el propósito de perjudicar a otro. *Pueblo v. Carmona, Rivera*, 143 D.P.R. 907, 914-915 (1997); *Pueblo v. De León*, 102 D.P.R. 446, 449 (1974); 33 L.P.R.A. secc. 3061.

La intención es una condición subjetiva. En ausencia de manifestaciones del imputado que reflejen su estado anímico, el Ministerio Fiscal sólo puede establecerla con prueba de las circunstancias relacionadas con la comisión del delito y la conducta del imputado. *Pueblo v. Flores Betancourt,* 124 D.P.R. a la pág. 878; *Pueblo v. Miranda Ortiz*, 117 D.P.R. 188, 194 (1986); *Pueblo v. De León*, 102 D.P.R. a la pág. 449.

Se trata, en cualquier caso, de una cuestión de hecho a ser evaluada por el juzgador de primera instancia. *Pueblo v. Flores Betancourt*, 124 D.P.R. a la pág. 878; *Pueblo v. Bonilla Ortiz*, 123 D.P.R. 434, 441-443 (1989).

En la situación de autos, no estamos en posición de concluir que el Tribunal de Primera Instancia hubiera errado al declarar culpable al apelante del delito imputado. Lo cierto es que la prueba estableció que el apelante conocía que no tenía licencia y que descansó en un documento espúreo para justificar su ejercicio de la podiatría.

A nuestro juicio, la evidencia circunstancial es suficiente para sostener la conclusión de que el apelante falsificó el documento en cuestión, para tratar de justificar sus credenciales. Cuando menos, el récord está claro de que el apelante trató de *"pasar como genuino"* dicho documento, sabiendo que el mismo era falso, conducta tipificada por el Artículo 275 del Código Penal.

El apelante plantea que en 1990 fue acusado ante el Tribunal de Primera Instancia, caso G90-2274, por infracción al Art. 403 de la Ley de Sustancias Controladas, por haber recetado sustancias controladas, sin contar con autorización. El apelante señala que en dicha ocasión, resultó absuelto de los cargos, lo que implica que el Tribunal admitió su contención de que el apelante gozaba de autorización para practicar la podiatría. El apelante

alega que dicha absolución constituye un impedimento para el presente proceso en su contra.

Lo cierto es que los elementos de los delitos imputados son distintos, no existiendo ninguna correlación necesaria entre los mismos. La convicción del apelante en el presente caso no conlleva inconsistencia necesaria alguna con su absolución anterior por el delito de recetar narcóticos sin autorización. Véanse, *Pueblo v. Echevarría Rodríguez II*, 128 D.P.R. 752, 767-768 (1991); *Pueblo v. Gómez Nazario*, 121 D.P.R. 66, 75 (1988); *Pueblo v. Cabán Torres*, 117 D.P.R. a las págs. 657-658; *Pueblo v. Millán Meléndez*, 110 D.P.R. 171, 182 (1980); *Pueblo v. Cruz Negrón*, 104 D.P.R. 881, 883-884 (1976); *Pueblo v. Figueroa Castro*, 102 D.P.R. 279, 288 (1974); *Pueblo v. Cortés Calero*, 99 D.P.R. 679, 684 (1971); *Pueblo v. Medina Ocasio*, 98 D.P.R. 302, 304-305 (1970); véase, además, Ernesto Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Vol II, Colombia, Forum, 1992, págs. 347-348. ■

El apelante plantea, finalmente, que la prueba refleja que fue víctima de un entrampamiento por parte de los agentes del Orden Público.

La norma en nuestra jurisdicción es que cuando una conducta criminal es producida por el incitamiento de la Policía, hasta el punto en que dicho incitamiento es la causa principal que produjo el delito, sin la cual no hubiera sido cometido, ello constituye una defensa para el acusado. Véanse, *Pueblo v. Kravitz*, 105 D.P.R. 158, 167 (1976); *Pueblo v. Flores Coris*, 99 D.P.R. 880, 882-883 (1971); *Pueblo v. Vélez Torres*, 98 D.P.R. 5, 12 (1969); *Pueblo v. García*, 92 D.P.R. 573, 575 (1965); *Pueblo v. Verdejo Meléndez*, 88 D.P.R. 207, 211 (1963); *Pueblo v. Serrano Pagán*, 85 D.P.R. 684, 694 (1962); *Pueblo v. Seda*, 82 D.P.R. 719, 730 (1961); véase, además, Chiesa Aponte, *supra*, a las págs. 74-80.

El Art. 21 del Código Penal dispone, en este sentido:

*"No incurre en responsabilidad el que realizar el hecho delictuoso inducida la intención criminal en su mente por ardid, persuasión o fraude de oficial público, o por persona privada actuando en colaboración con el oficial público. Este eximente no beneficiará al co-autor ajeno a la inducción engañosa del oficial público o de la persona que con éste colabore."*

33 L.P.R.A. sec. 3094.

El prof. Chiesa aclara que esta defensa gira más bien en torno a la predisposición del acusado a delinquir. La defensa no prevalece si el Estado establece que el acusado estaba predispuesto a cometer el delito y que la conducta de los funcionarios meramente le facilitó su comisión. Chiesa, *supra*, a la pág. 74; véase, además, *Pueblo v. García*, 92 D.P.R. a la pág. 575; *Sorrells v. United States*, 287 U.S. 435, 441-442 (1932). *"Todo cuanto se requiere es que la actuación del agente no incite o induzca la intención criminal en la mente del acusado, aunque facilite la comisión del delito". Pueblo v. Seda,* 82 D.P.R. a la pág. 730.

En la situación de autos, hemos considerado el récord del caso y somos de la opinión que el Tribunal no erró al denegar la defensa invocada por el apelante. La evidencia desfilada refleja, en este sentido, que el apelante mantenía un consultorio de podiatría, anunciándose como tal. Al comparecer los agentes encubiertos a su oficina, el apelante se ofreció voluntariamente a brindarles tratamiento de esta naturaleza. Su conducta no fue, como tal, inducida por los agentes, sino que el récord refleja que el apelante tenía la predisposición de desempeñar estas funciones, a pesar de que conocía de que no contaba con la licencia requerida por Ley. El error no se cometió.

Por los fundamentos expresados, se confirma la sentencia apelada.

Lo pronunció y lo manda el Tribunal y lo certifica la señora Secretaria General.

**ESCOLIOS 2004 DTA 119**

**1.** Previo a la Ley Núm. 170, la práctica de la profesión de podiatría en Puerto Rico había estado inicialmente subsumida bajo la Ley Núm. 22 de 22 de abril de 1931, que asignaba al Tribunal Examinador de Médicos la función de expedir las licencias correspondientes para las profesiones de médico cirujano, osteópata y otras profesiones auxiliares.

La Ley Núm. 22 fue sustituida por la Ley Núm. 97 de 21 de junio de 1961, la cual reglamentó formalmente la práctica de la profesión de podiatría, adoptando requisitos parecidos a los de la Ley Núm. 170. Se asignó al Tribunal Examinador de Médicos, la función de emitir licencias para la práctica de dicha profesión, tipificándose como delito la práctica ilegal de dicha profesión.

La Ley Núm. 97, a su vez, fue sustituida por la Ley Núm. 180, que creó a la Junta Examinadora de Médicos Podiatras como un organismo independiente encargado de la fiscalización de dicha profesión.

**2.** En contextos similares al del caso de autos, el Tribunal Supremo de Puerto Rico ha expresado que el elemento esencial en los delitos de fraude es la intención de defraudar. *Pueblo v. Fernández Simono*, 140 D.P.R. 514, 521 (1996).

**3.** Debe recordarse que el apelante sí tenía una licencia de Técnico Auxiliar de Cirugía. No se desprende si dicho título conllevaba autorización para recetar medicamentos controlados. El apelante señala que en 1988, el Departamento de Salud le concedió una licencia para recetar medicamentos controlados.